COMMONWEALTH *vs.* JULIO SANTOS.

No. 98-P-532.

Middlesex. April 7, 1999. - August 26, 1999.

Present: BROWN, PERRETTA, & JACOBS, JJ.

*Delinquent Child. Statute,* Construction. *Words,* "Delinquency of a child."

At the trial of a complaint alleging contributing to the delinquency of a minor (G. L. c. 119, § 63), in which the Commonwealth presented evidence that the defendant aided a thirteen year old child in running and staying away from home for about a week, the defendant was entitled to a required finding of not guilty, where the Commonwealth failed to show that the child committed any delinquent act. [641-644]

COMPLAINT received and sworn to in the Ayer Division of the District Court Department on February 6, 1996.

The case was tried before *James M. Geary, Jr.,* J.

*Sara Discepolo* for the defendant.

*Lincoln S. Jalelian,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. At the conclusion of a trial in the District Court, the jury found the defendant guilty on a complaint charging that he "did cause, induce, abet, encourage or contribute towards the delinquency of a child or act in a way tending to cause or induce such delinquency, in violation of G. L. c. 119, § 63."[1] To sustain its burden of proof on the complaint, the Commonwealth presented evidence to show that the defendant aided a thirteen year old child in running and staying away from home for about a week. The defendant argues on appeal that, because the Commonwealth failed to show that the child com-

[1]That statute provides, in relevant part: "Any person who shall be found to have caused, induced, abetted, or encouraged or contributed toward the delinquency of a child, or to have acted in any way tending to cause or induce such delinquency, may be punished by a fine of not more than five hundred dollars or by imprisonment of not more than one year, or both."

mitted any delinquent act, he was entitled to a required finding of not guilty. We agree and reverse the conviction.

1. *The trial.* Immediately after the jury were empaneled, the trial judge made "some preliminary remarks to familiarize" the jurors with the case. One remark was:

> "[I]n order to prove the defendant guilty, the Commonwealth must prove two things beyond a reasonable doubt. First, that a child who was at least 7 years of age and less than 17 years of age committed a delinquent act or acts being one that violates the law of the Commonwealth, a city ordinance or a town bylaw. And secondly, the Commonwealth must prove beyond a reasonable doubt that the defendant caused that child's behavior, or brought it about, or helped it along, or encouraged or contributed to it or acted in a way that tended to cause it or to bring it about."

Immediately following the trial judge's preliminary instructions to the jury, the prosecutor made his opening statement. He informed the jury that he would present evidence to show that the defendant aided two girls, Anne and Beth (pseudonyms), ages thirteen and fifteen, respectively, to run away from their homes. As repeatedly stressed by the prosecutor, the defendant's crime was that he did "facilitate this whole runaway situation" and caused the girls to be absent from school for a number of days. He concluded his opening statement on the following note:

> "There are two elements I have to prove . . . One is that [Anne and Beth] committed a delinquent act. That can be any one of a number of things. The judge is, in all likelihood going to address you and instruct you [at the conclusion of the evidence] on what that act is. I would put forth that it can be *truancy*, not going to school; it can be just *running away*. That's the most simple way. You're not allowed to run away. Whether your parents tell you to or whether the law tells you to, that's a delinquent act and the fact that the defendant encouraged it. The final element the judge is going to instruct you, he already told you what it was, is that he encouraged, helped. This went far beyond encouragement. The defendant caused this to come about. He could have prevented it and he didn't" (emphasis supplied).

Against the backdrop of the trial judge's preliminary instructions and the prosecutor's opening statement, the Commonwealth presented its case. There is no need to recite the evidence in detail. It is enough to state that the Commonwealth showed that Anne and Beth decided to run away from their homes and telephoned the defendant to ask for his assistance. On the morning of January 12, 1996, he met the two girls, drove them to a motel, and left them in his car while he registered for a room.[2] He then returned to the car, brought the girls to their room, ordered a pizza for them, and left. He returned to the motel the next day and brought Anne and Beth to the home of a woman he said was his cousin. About seven days later, the police went to that house, removed the girls, and brought them home.[3]

In his closing argument to the jury, the prosecutor again specifically and repeatedly identified the girls' flight from their homes as being the delinquent act encouraged and caused by the defendant. For example: "If somebody calls you up and says, I want to run away, oh, okay, I'll pick you up, no problem. That's not what you're supposed to do. That's illegal and that's what the defendant did"; "Was it a stupid idea to run away? . . . [I]t was a very bad idea. The purpose of this law is to prevent adults from contributing to the bad ideas or the delinquent acts of children."

In his final instructions to the jury, the trial judge made no reference to any specific act by Anne or Beth in defining the term "delinquent act" and, instead, simply repeated the definition he had given in his preliminary remarks, that is, that a "delinquent act is one that violates a law of the Commonwealth, any city ordinance or town bylaw."

The jury found the defendant guilty on the complaint pertaining to Anne and not guilty on the complaint pertaining to Beth.[4]

2. *Discussion.* There is no question that the Commonwealth's

---

[2]The girls had saved some money and had sufficient funds to pay for a short stay at a motel.

[3]There was evidence, a police officer's testimony, that the girls were found through a telephone call to a number having "caller ID."

[4]In reaching different verdicts on the complaints and notwithstanding the fact that Beth's mother was among the first to sound the alarm that her daughter was missing, the jury could have relied upon evidence that the day before Beth ran away, her mother asked that she turn over her key to the house and leave.

evidence was sufficient to show that the defendant assisted Anne in running away from her home. It does not follow, however, that the evidence was sufficient to show that the defendant thereby contributed to Anne's delinquency, as that term is used in G. L. c. 119, § 63.

In 1973, the Legislature, by St. 1973, c. 1073, "decriminalized" status offenses, that is, the Legislature determined that children who were "stubborn," "wayward," "runaway[s]," and "truants" were to be treated as children in need of services and not as delinquents.[5] See *Commonwealth* v. *Florence F., a juvenile,* 429 Mass. 523, 526 (1999). See also St. 1973, c. 1073, § 19, eliminating the word "waywardness" from G. L. c. 119, § 63. See generally Ireland, Juvenile Law § 142 (1993), explaining the "decriminalization" of status offenses committed by juveniles, such as "stubborn" and "runaway[]" children. As defined by G. L. c. 119, § 21, a "child in need of services," as that term is used in c. 119, § 22 through § 51F, inclusive, is:

> "A child below the age of seventeen who persistently *runs away from the home* of his parents or legal guardian, or persistently refuses to obey the lawful and reasonable commands of his parents or legal guardian, thereby resulting in said parent's or guardian's inability to adequately care for and protect said child, or a child between the ages of six and sixteen who persistently and wilfully *fails to attend school* or persistently violates the lawful and reasonable regulations of his school" (emphasis supplied).

Sections 22 through 51F, inclusive, set out the procedures whereby services needed for a child falling within the definition of § 21, may be sought and obtained.

A "delinquent child, as defined by G. L. c. 119, § 52, and the trial judge, is a "child between seven and seventeen who violates any city ordinance or town by-law or who commits any offense against a law of the commonwealth." That definition carries through to all sections of c. 119 subsequent to § 52 and, therefore, has applicability to § 63.

As provided by c. 119, § 54 through § 58, a child can be adjudicated a delinquent only after proceedings upon a

---

[5]Truancy was "decriminalized" by the express repeal of G. L. c. 77, which had allowed for the detention of habitual truants or habitual school absentees in State training schools. See St. 1973, c. 1073, § 2.

complaint alleging the child to be a delinquent child within the meaning of ·§ 52; that is, an adjudication of delinquency is based upon the child's violation of an ordinance or by-law, or commission of an offense against the laws of the Commonwealth. Reading these provisions, c. 119, § 52 through § 63, as a harmonious whole, we conclude that the phrase "delinquency of a child," as used in § 63, comprehends an act by a child sufficient to support an adjudication of delinquency. See *Green* v. *Board of Appeals of Provincetown*, 404 Mass. 571, 573 (1989) ("same words in different parts of a statute enacted at the same time, barring some contrary indication in the statute, should receive the same meaning").

Our conclusion that truancy is not comprehended within the phrase "delinquency of a child," as used in § 63, is not altered by the fact that Anne may have violated G. L. c. 76, § 1, when she missed six or seven days of school in January, 1996. The purpose of that statute, which speaks to compulsory school attendance, is to guarantee children access to public schools for a set number of days each year. See *Board of Educ.* v. *School Comm. of Quincy*, 415 Mass. 240 (1993). To accept the Commonwealth's reading of the statute, that school absenteeism constitutes an offense against the laws of the Commonwealth within the meaning of c. 119, § 52, is to undo the repeal of c. 77. As we read c. 119, as amended by St. 1973, c. 1073, a child's failure to comply with school attendance requirements shows the child to be one in need of services rather than a delinquent. See Ireland, Juvenile Law § 142.

There remains one last arrow in the Commonwealth's quiver, that is, G. L. c. 140, § 29. As relevant, that statute provides: "No person shall write or cause to be written, or if in charge of a register knowingly permit to be written, in any register in any . . . motel . . . any other or different name or designation than the true name or name in ordinary use of the person registering or causing himself to be registered therein. No person occupying such room shall fail to register or fail to cause himself to be registered." See G. L. c. 140, § 27. The only evidence to which the Commonwealth can point as sufficient to show that the defendant caused Anne to violate c. 140, § 29, is Beth's response to the prosecutor's inquiry as to whether she, Beth, got out of the car when she first arrived at the motel. She answered, "We drove around to the side so they couldn't see us because we're — we're under age to rent a hotel and we knew that if

they see us in the car, that they wouldn't let him rent the hotel room."

This argument, that Beth's statement is sufficient to defeat the defendant's motion for a required finding of not guilty, fails for two reasons. First, the argument advanced on appeal was never even suggested in the trial court. There was nothing in either the broadly worded complaint brought against the defendant or in the manner in which the prosecutor tried the case which could have alerted the trial judge to the fact that, among all the by-laws, ordinances, and laws of the Commonwealth that Anne might have violated during the seven-day period here in dispute, this specific statute was at issue. To the contrary, as identified and emphasized by the prosecutor in his opening statement, Anne violated the law when she ran away from home and was absent from school. In these circumstances, we do not consider the Commonwealth's argument. See *Commonwealth* v. *George*, 406 Mass. 635, 636 n.4 (1990).

Secondly, even if we were to consider the argument, the Commonwealth presented nothing to show that the defendant did not register Anne and Beth as occupants of the motel room.[6] Beth's belief that she and Anne would not be allowed to rent a room if their minority were observed does not provide sufficient grounds for concluding that the defendant did not list their names as occupants of the room he was renting. Neither Anne, nor Beth were present when the defendant registered for the room, and the Commonwealth was apparently unprepared to introduce the registration form in evidence.

3. *Conclusion.* It follows from what we have said that the defendant's motion for a required finding of not guilty should have been granted at the close of the Commonwealth's case. The judgment is reversed, the verdict is set aside, and judgment is to enter for the defendant.

*So ordered.*

---

[6]Because the sufficiency of the Commonwealth's evidence is to be assessed at the time of the defendant's motion, see *Commonwealth* v. *Cordle*, 412 Mass. 172, 173 (1992), we do not consider the defendant's testimony that he was at the motel on the day at issue with his cousin and not with Anne and Beth.