DON DIFIORE & others[1] *vs.* AMERICAN AIRLINES, INC.

Suffolk. April 6, 2009. - August 4, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Labor,* Wages. *Statute,* Construction. *Words,* "Service charge."

Discussion of G. L. c. 149, § 152A, the Massachusetts Wage Act (act), and the Legislature's intent in its enactment, i.e., to ensure that all service employees receive the tips, gratuities, and service charges that customers intend them to receive, and to protect such employees from any contract that might deny them the protection of the act. [490-493]

This court invoked the statutory invitation in G. L. c. 149, § 152A (*a*), of the Massachusetts Wage Act (act) to adjust the definition of "service charge" if "required by the context" by concluding that a "service charge" need not be charged by an employer, but may be imposed by any person or entity; therefore, an employer may not avoid the mandate of the act to remit all service charges to service employees by outsourcing the services of service employees and contractually requiring the outsource employer to remit to the original employer all or part of the service charges. [493-497]

CERTIFICATION of a question of law to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.

*Shannon Liss-Riordan* (*Hillary Schwab* with her) for the plaintiffs.

*Amy Cashore Mariani* (*Michael A. Fitzhugh* with her) for the defendant.

The following submitted briefs for amici curiae:

*David J. Kerman, Matthew A. Porter, & Douglas J. Hoffman* for Air Transport Association of America, Inc.

*John Pagliaro, Martin J. Newhouse, & Jo Ann Shotwell Kaplan* for New England Legal Foundation & another.

---

[1]Leon Bailey, James E. Brooks, Ritson Desrosiers, Marcelino Coleta, Tony Pasuy, Laurence Allsop, Clarence Jeffreys, Floyd Woods, and Andrea Connolly. Two of the plaintiffs, DiFiore and Brooks, were employed by American Airlines, Inc. (American), and the remaining plaintiffs were employed by G2 Secure Staff, LLC (G2).

*Catherine K. Ruckelshaus*, of New York, *Philip J. Gordon, & Audrey R. Richardson* for Massachusetts Employment Lawyers Association & others.

GANTS, J. In the fall of 2005, the defendant, American Airlines, Inc. (American), imposed, at selected airports, a charge of two dollars per bag to its customers who chose to check their luggage at curbside rather than at a ticket counter. The charge did not include any gratuity to the workers who physically handled the curbside baggage check-in, namely, the "skycaps." Before the imposition of this two dollar per bag charge, there had been no cost to American's customers for curbside baggage check-in, although a tip could be given to the skycaps at the discretion of the customer. Ten skycaps filed suit, alleging that American's imposition of the two dollar per bag charge violated the provisions of the Massachusetts Wage Act protecting wages and tips, G. L. c. 149, § 152A (Act), and tortiously interfered with contractual or advantageous relations.[2] The case was tried in the United States District Court for the District of Massachusetts, and a jury found in favor of nine of the ten skycaps, awarding them a total of $325,056. After the trial, the judge granted a new trial as to the claims brought by the eight plaintiffs not employed by American and certified the following question:

> "Does the [Act's] definition of 'service charge' encompass two different types of fees, the first of which (a fee charged in lieu of a tip) must be charged by the plaintiff's employer in order to satisfy the definition and the second of which (a fee that patrons reasonably believe will be given to a protected employee) may be charged by anyone?"[3]

---

[2]The ten skycaps sought to bring these claims on behalf of similarly situated skycaps, but the judge denied class certification. Other claims were brought, but later were dismissed.

[3]The certification was made pursuant to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981), which, in relevant part, provides: "This court may answer questions of law certified to it by . . . a United States District Court . . . when requested by the certifying court if there are involved in any proceeding before it questions of law of this State which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court."

In his certification order, the trial judge also welcomed our advice on "any other questions of Massachusetts law deemed material to this case." See *Baird* v. *Attorney Gen.*, 371 Mass. 741, 765 (1977). We answer the question in the negative, and do not agree with the interpretation of the Act that resulted in the grant of a new trial.[4]

1. *Background.* The relevant background and procedural history of the case set forth below is contained in the certification order of the District Court judge, occasionally supplemented by undisputed information in the record. Of the ten plaintiff skycaps, two are directly employed by American, one at Boston's Logan International Airport (Logan), and another at an airport in Missouri. The remaining eight skycaps worked at American's terminal at Logan, but were directly employed by G2 Secure Staff, LLC (G2), a company American contracted with to provide skycap services.

Before 2005, American did not charge its customers for skycap services, but customers were invited to give the skycaps a tip at their discretion. In 2005, American imposed a mandatory two dollar per bag charge for curbside baggage check-in. The skycaps retained no part of this fee. Instead, after collecting the fee, the skycaps employed by G2 were required to remit it to G2, which split the fee with American; those skycaps employed directly by American remitted the fee to American.

In their complaint, the plaintiffs allege that American violated the Act by failing to distribute the proceeds of the two dollar per bag service charge to the skycaps, and by not adequately notifying customers in writing that the charge is not a tip for the skycaps.[5] The plaintiffs' claims for violation of the Act and tortious interference with contractual or advantageous relations were tried to a jury in March and April of 2008. The jury returned a verdict

---

[4]We decline to address other questions posed by the parties that have not been included in the certification order. See, e.g., *Phillips* v. *Pembroke Real Estate, Inc.*, 443 Mass. 110, 114 n.7 (2004); *Woodward* v. *Commissioner of Social Sec.*, 435 Mass. 536, 538 (2002).

[5]The case initially was filed in Superior Court in Suffolk County, but was removed to the United States District Court for the District of Massachusetts. G2 had been named as a defendant, but was dismissed from the suit by stipulation, apparently because its employment contract with eight of the plaintiffs mandated arbitration.

in favor of all but one of the plaintiffs (the skycap directly employed by American in Missouri).[6]

On June 19, 2008, the judge granted, in part, American's motion for a new trial as to the claims brought by the eight plaintiff skycaps employed by G2 (G2 skycaps). The judge concluded that he had erred in instructing the jury on what constituted a "service charge" under the Act.[7]

General Laws c. 149, § 152A (*a*), defines a "[s]ervice charge" as "a fee charged by an employer to a patron in lieu of a tip to any wait staff employee, service employee, or service bartender, including any fee designated as a service charge, tip, gratuity, or a fee that a patron or other consumer would reasonably expect to be given to a wait staff employee, service employee, or service bartender in lieu of, or in addition to, a tip." In his memorandum and order granting a new trial, the judge interpreted the definition of service charge to encompass two separate fees: (1) "a fee charged by an employer to a patron in lieu of a tip to any . . . service employee . . . , including any fee designated as a service charge, tip, [or] gratuity,"[8] and (2) "a fee that a patron or other consumer would reasonably expect to be given to a . . . service employee . . . in lieu of, or in addition to, a

---

[6]The verdict slip required the jury to specify the claim on which liability was predicated and the resulting amount of damages. With regard to seven of the plaintiffs, the jury found liability for both tortious interference and a violation of the Act. Two plaintiffs alleged only a violation of the Act, and the jury found in their favor. The skycap who was employed by American in Missouri alleged only a claim of tortious interference, which the jury rejected as to him.

[7]The District Court judge had instructed as follows:

"Under the [Act], a service charge is a fee charged to a patron in lieu of or in addition to a tip and includes any fee designated as a service charge, tip, gratuity as well as fees . . . charged that a patron or other consumer would reasonably expect to be given to a service employee in lieu of or in addition to a tip. . . .

"[T]he skycaps can recover against American under the [Act] by proving either that the $2 per bag curbside check-in fee was designated by American as a service charge, tip, or gratuity, or that patrons or other consumers would reasonably expect that the $2 fee was a tip being collected on behalf of the skycap and would be given to the skycap instead of or in addition to a tip."

[8]The judge concluded that the omission of the word, "or," between "tip" and "gratuity" in the statutory definition of service charge was "a scriveners' error."

tip." Based on his parsing of the statutory language, he concluded that the first category — a fee designated as a service charge — falls within the statutory definition of "service charge" only when the fee is imposed by the employer of the service employee, but the second category — a fee that a customer would reasonably expect to be given to a service employee — is a "service charge" under the Act regardless of who imposes it. He determined that he erred in instructing the jury regarding the meaning of a "service charge" by failing to limit the definition of the first category of fee to a fee charged by an employer. Because the jury could have relied on his instruction in determining American's liability, the judge concluded that a new trial is required.[9] On October 1, 2008, the judge issued the certification order that essentially asked us to determine whether his posttrial interpretation of the Act was correct.[10]

2. *Discussion.* The question before us is one of statutory construction. Where the meaning of a statute is not plain from its language, familiar principles of statutory construction guide our interpretation. We look to the intent of the Legislature "ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Industrial Fin. Corp.* v. *State Tax Comm'n,* 367 Mass. 360, 364 (1975), quoting *Hanlon* v. *Rollins,* 286 Mass. 444, 447 (1934). In addition, our respect for the Legislature's considered judgment dictates that we interpret the statute to be sensible, rejecting unreasonable interpretations

[9]The judge rejected American's claim that it was entitled to judgment as a matter of law. He reasoned that American could be liable under the Act for requiring the G2 skycaps to remit the second category of "service charge," which did not need to be charged by an employer.

[10]We acknowledge the amicus brief filed in support of the plaintiffs by the Massachusetts Employment Lawyers Association, Greater Boston Legal Services, Centro Presente, Chelsea Collaborative, Labor Council for Latin American Advancement, Massachusetts Coalition for Occupational Safety and Health, Massachusetts Jobs with Justice, Metrowest Immigrant Worker Center, Project Voice, American Friends Service Committee, and National Employment Law Project, and the amicus briefs filed in support of American Airlines, Inc. by the Air Transport Association of America, Inc., and New England Legal Foundation and Associated Industries of Massachusetts.

unless the clear meaning of the language requires such an interpretation. See *Commonwealth* v. *Dodge*, 428 Mass. 860, 865 (1999), quoting *Beeler* v. *Downey*, 387 Mass. 609, 616 (1982) ("we must read the statute in a way to give it a sensible meaning"). Where possible, we construe the various provisions of a statute in harmony with one another, recognizing that the Legislature did not intend internal contradiction. *Locator Servs. Group, Ltd.* v. *Treasurer & Receiver Gen.*, 443 Mass. 837, 859 (2005).

The Legislature's intent in enacting the Act can be plainly discerned from its language and history — to ensure that service employees receive the tips, gratuities, and service charges that customers intend them to receive. Before the September 8, 2004, amendment that applies in this case, the Act, as amended in 1983, read in relevant part:

> "No employer or other person shall solicit, demand, request or accept from any employee engaged in the serving of food or beverage any payment of any nature from tips or gratuities received by such employee during the course of his employment, or from wages earned by such employee or retain for himself any tips or gratuities given directly to the employer for the benefit of the employee, as a condition of employment; and no contract or agreement between an employer or other person and an employee providing for either of such payments shall afford any basis for the granting of legal or equitable relief by any court against a party to such contract or agreement. If an employer or other person submits a bill or invoice indicating a service charge, the total proceeds of such charge shall be remitted to the employees in proportion to the service provided by them. Whoever violates any provision of this section shall be punished by a fine of not more than one thousand dollars and the court may require such employer or other person to make restitution for any tips or gratuities accepted or retained by him in violation of this section."

St. 1983, c. 343.

The plain meaning of the language in the Act as appearing in St. 1983, c. 343, is that no employer or other person may take any tip or gratuity received by any employee engaged in serving food or beverages, even with the agreement of the server. See

*Cooney* v. *Compass Group Foodservice*, 69 Mass. App. Ct. 632, 637 (2007). If the employer or other person includes a service charge in the bill, the entirety of that service charge must be remitted to the food and beverage servers who provided the service. *Id.* ("the statutory language reflects legislative intent to regard any fee that the invoicing entity chooses to call a 'service charge' on an invoice for food or beverage service as being the functional equivalent of a tip or gratuity, thereby subjecting the fee to the statute"). The obligation to remit the service charge to the food and beverage servers was not limited to the servers' direct employer; the Act imposed that obligation on the "employer *or other person*" that assessed the service charge. *Id.* at 640-641.

The Legislature replaced the predecessor Act in its entirety with the current Act in 2004. St. 2004, c. 125, § 13. The new version expanded the scope of the Act to cover not just food and beverage servers, but all service employees who, like skycaps, "work[] in an occupation in which employees customarily receive tips or gratuities, and who provide[] service directly to customers or consumers . . . and who [have] no managerial responsibility." G. L. c. 149, § 152A (*a*). There is nothing in the legislative history of the amendment or its language to suggest that the Legislature intended to diminish the protection provided to these employees. Indeed, as expressly stated in its title, the purpose of the revised Act is to "protect[] the wages and tips of certain employees." *Id.*

General Laws c. 149, § 152A (*b*), provides:

> "No employer or other person shall demand, request or accept from any wait staff employee, service employee, or service bartender any payment or deduction from a tip or service charge given to such wait staff employee, service employee, or service bartender by a patron. No such employer or other person shall retain or distribute in a manner inconsistent with this section any tip or service charge given directly to the employer or person."

General Laws c. 149, § 152A (*d*), provides:

> "If an employer or person submits a bill, invoice or charge to a patron or other person that imposes a service charge or tip, the total proceeds of that service charge or

tip shall be remitted only to the wait staff employees, service employees, or service bartenders in proportion to the service provided by those employees.

"Nothing in this section shall prohibit an employer from imposing on a patron any house or administrative fee in addition to or instead of a service charge or tip, if the employer provides a designation or written description of that house or administrative fee, which informs the patron that the fee does not represent a tip or service charge for wait staff employees, service employees, or service bartenders."

Both of these statutory prohibitions apply to employers or other persons, just as they did under the previous version of the Act.

The current version of the Act also continues to protect employees from any contract that may deny them protection of the Act. While the earlier version of the Act rendered unenforceable any agreement with an employee that allowed an employer or other person to receive the employee's tips or gratuities, the current version of the Act grants employees even broader protection, providing, "No employer or person shall by a special contract with an employee or by any other means exempt itself from this section." G. L. c. 149, § 152A (*g*).

We turn now to the interpretation proposed in the certified question of the definition of "service charge," and examine it in light of the principles of statutory construction that we earlier discussed. The Legislature intended to ensure that service employees receive all the proceeds from service charges, and any interpretation of the definition of "service charge" must reflect that intent. Under the judge's interpretation, even though § 152A (*d*) of the Act requires "an employer or person" to remit all service charges to service employees, this obligation would not apply to fees designated as service charges that were charged by someone other than the service employee's employer, because such fees would not be deemed "service charges." In effect, the mandate of § 152A (*d*) would be undercut by the definition of "[s]ervice charges" in § 152A (*a*). The Legislature, however, made clear in § 152A (*a*) that it wished the definitions it enacted to serve its legislative purpose, not thwart it, and invited courts to revise the

definitions if they interfered with that legislative purpose. Section 152A (*a*) begins: "As used in this section, the following words, [which include 'service charge'], *unless a different meaning is required by the context or is specifically prescribed*, shall have the following meanings" (emphasis added).

Moreover, an airline or restaurant may not escape the prohibition in § 152A (*d*) of the Act by entering into a contract with a service entity, such as G2, under which the service entity would employ the service employees, waitstaff employees, and service bartenders, and agree to pay to or share with the airline or restaurant the service charge billed to customers. This would be precisely the type of special contract prohibited by § 152A (*d*), because it would provide a means to exempt the airline or restaurant from its obligations under the Act. See generally *Newton-Wellesley Hosp.* v. *Magrini*, 451 Mass. 777, 784 (2008) (interpreting statute in manner consistent with Legislature's intent).

In addition, we must give a sensible meaning to the Act. It would not be sensible to allow an airline or restaurant that subcontracted skycap or waitstaff services to keep fees paid by customers that were "designated as" service charges, but require it to remit to skycaps or waitstaff employees any fees that a customer would "reasonably expect to be given" to a skycap or waitstaff employee. Because a customer reasonably would expect a fee "designated as a service charge" to be given to service employees, all, or nearly all, fees designated as service charges would also be fees that customers would reasonably expect to be given to service employees. It would have been pointless for the Legislature to have allowed nonemployers to keep the narrower category of fees "designated as" service charges, but not the broader category of fees that a customer would "reasonably expect to be given" to service employees. See *Flemings* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 374, 375-376 (2000) ("If a sensible construction is available, we shall not construe a statute . . . to produce absurd results").

Finally, we need not construe the definition of "[s]ervice charge" to be in conflict with the broad prohibition against *anyone* denying service employees their entitlement to service charges. As noted earlier, § 152A (*a*) instructs those interpreting the defini-

tions in the Act to give a different meaning to a defined term if necessary to prevent such disharmony among the provisions of the statute. See *Dowling* v. *Registrar of Motor Vehicles*, 425 Mass. 523, 525 (1997) (when two statutory provisions relate to the same subject matter, they should, whenever possible, be construed together in harmony consistent with legislative purpose).

The interpretation of the definition of "[s]ervice charge" contained in the certified question is based on the punctuation used in the definition, namely that the placement of the comma after the word "gratuity" signified the end of the clause that gave examples of "a fee charged by an employer to a patron in lieu of a tip," and the beginning of a clause defining a separate fee that need not be charged by an employer. This interpretation assumes that the absence of the word "or" before "gratuity" was "a scriveners' error." We conclude that the clause in the definition beginning with "including any fee," and continuing through the end of the sentence, lists nonexclusive examples of fees that constitute service charges. The Legislature's use of a serial comma before the conjunction "or" signals the final example of a type of fee in a noninclusive series, not the end of the clause and the commencement of a definition of another fee. See B.A. Garner, A Dictionary of Modern Legal Usage 714 (2d ed. 1995) ("The question whether to include the serial comma has sparked many arguments [and] is easily answered in favor of including the final comma, for its omission may cause ambiguities, whereas its inclusion never will"); See W. Strunk & E.B. White, The Elements of Style 2 (4th ed. 2000) (list of particulars is separated by commas and connected by single conjunction).

More importantly, we do not adopt a statutory interpretation derived from an analysis of punctuation that conflicts with principles of statutory construction. "[M]atters of punctuation are not necessarily determinative and should not be allowed to defeat the true purpose and meaning of a statute." *Globe Newspaper Co.* v. *Boston Retirement Bd.*, 388 Mass. 427, 432 (1983). See also *Dowling* v. *Assessors of Boston*, 268 Mass. 480, 488 (1929), quoting *Barrett* v. *Van Pelt*, 268 U.S. 85, 91 (1925) ("Punctuation is a minor, and not a controlling element in interpretation, and courts will disregard the punctuation of a statute,

or repunctuate it, if need be to give effect to what otherwise appears to be its purpose and true meaning"); *County Comm'rs of Essex County* v. *Mayor of Newburyport*, 252 Mass. 407, 410 (1925) ("A strict grammatical construction and narrow definition of this section might reveal some defects in rhetorical composition, but the main purpose of the Legislature seems plain"); *Goddard* v. *Pratt*, 16 Pick. 412, 434 (1835) ("it is not safe to depend on punctuation, and it is necessary to look carefully at the probable intent of the legislature"). In other words, to paraphrase a statement attributed to Sigmund Freud, sometimes a comma is "just" a comma. See Bartlett's Familiar Quotations 570 (J. Kaplan, ed., 16th ed. 1992) ("Sometimes a cigar is just a cigar").

We also reject American's argument that the presence of the word "employer" in the definition of the term "service charge" means that only employers (here G2 and not American) are barred from pocketing service charges. As has been stated, the text preceding the definitions in the Act expressly permits ascribing a different definition to a term if required by the context. See G. L. c. 149, § 152A (*a*). Here, we do not think that the Legislature intended to permit restaurants and airlines to avoid the mandates of the statute by outsourcing the services of waitstaff and service employees, and contractually requiring the outsource employer to remit to the restaurant or airline all or part of the service charges. To allow such an "end run" around the Act would contravene the express purpose of the Act, namely to protect gratuity payments given to, or intended for, service employees such as skycaps, and would nullify § 152A (*g*) of the Act, which specifically forbids this type of a maneuver "by special contract . . . [or] any other means." See *Newton-Wellesley Hosp.* v. *Magrini*, 451 Mass. 777, 784 (2008); *Wolfe* v. *Gormally*, 440 Mass. 699, 704 (2004), and cases cited (statute is to be construed to give effect to all its provisions so no part will be inoperative).[11]

---

[11]American attaches significance to the fact that the Attorney General, who is charged with administering the Act, see G. L. c. 149, § 152A (*f*), issued an advisory after the Act was revised in 2004 that restated the statutory definition of "[s]ervice charge" as a fee imposed on a customer by an employer. Advisory 2004/3. Where an agency is "charged with primary responsibility for administering [a statute]," we grant its interpretation substantial deference and will not

Rather, the inclusion of the phrase "by an employer" in the definition of a "[s]ervice charge" as "a fee charged by an employer to a patron in lieu of a tip to any wait staff employee, service employee, or service bartender," reflects nothing more than the Legislature's failure to imagine the possibility that anyone other than an employer would be imposing a service charge. It does not reflect any legislative intent to allow wait staff or service employees to be deprived of the proceeds of service charges if the deprivation is accomplished by causing or creating another entity to employ them. The enactment of § 152A (*g*) of the Act demonstrates that the Legislature was cognizant, in general, of the risk that employers or other persons may seek to find ways, through special contracts or other means, to attempt to avoid compliance with the Act, and intended to thwart such schemes. Therefore, we invoke the statutory invitation in § 152A (*a*) to adjust the definition of "service charge" if "required by the context" by concluding that a "service charge" need not be charged by an employer, but may be imposed by any person or entity.[12]

3. *Conclusion.* For the reasons stated, we answer, "No" to the certified question. The judge's instructions to the jury reprinted in note 7, *supra*, were a correct statement of Massachusetts law.

The Reporter of Decisions is to furnish attested copies of this opinion to the clerk of this court. The clerk in turn will transmit one copy, under the seal of the court, to the clerk of the United States District Court for the District of Massachusetts, as the answer to the question certified, and will also transmit a copy to each party. See, e.g., *Nett* v. *Bellucci*, 437 Mass. 630, 648 (2002).

---

disturb it where the interpretation is reasonable. *Gateley's Case*, 415 Mass. 397, 399 (1993). The Attorney General's advisory, however, neither contemplates, nor speaks to, the circumstances presented here. Accordingly, the advisory furnishes no guidance on the question certified to us.

[12]American contends that the rule of lenity dictates a different result. Assuming, without deciding, that the rule of lenity applies in a civil action when the violation of the statute may trigger criminal penalties, the rule of lenity does not apply here because, when the adjusted definition of "[s]ervice charge" is read in harmony with the remaining provisions of the Act, no ambiguity arises as to its intended meaning. See *Commonwealth* v. *Biagiotti*, 451 Mass. 599, 607 (2008) (where no ambiguity exists, rule of lenity not applicable). See also *Charles C.* v. *Commonwealth*, 415 Mass. 58, 70 (1993) (rule of lenity does not mean that sensible statutory interpretation is to be rejected in favor of fanciful or perverse one).