KAFKER, J.
**789 The recent amendment to G. L. c. 119, § 52, excludes from the definition of "[d]elinquent child," and thus from the jurisdiction of the Juvenile Court, children who commit "a **790 first offense of a misdemeanor for which the punishment is a fine, imprisonment in a jail or house of correction for not more than [six] months or both such fine and imprisonment." The meaning of the term "first offense" under the statute is the central issue of this case.
A delinquency complaint issued against the juvenile that charged him with a misdemeanor that carried a maximum penalty of imprisonment of less than six months. He moved to dismiss the complaint on the ground that because he had not previously been adjudicated delinquent for any offense, the charge was a "first offense" under § 52 and must be dismissed. A Juvenile Court judge denied the motion, concluding that because the juvenile had previously been charged with a separate offense for which probable cause had been found, the new charge *584 was not the juvenile's "first offense" under the amended statute. The juvenile filed a petition for relief in the county court, and the single justice reserved and reported the case to the full court.
For the reasons set forth infra, we conclude that the amendment to § 52 was plainly designed to give juveniles a "second chance" with regard to a "first offense of a misdemeanor" that carries a maximum punishment of six months' imprisonment or a fine (six months or less misdemeanor). In other words, the Legislature intended to excuse a juvenile's first isolated instance of such misconduct. This means that the Juvenile Court may not exercise jurisdiction where the juvenile's first offense is one such misdemeanor. Once a juvenile has committed his or her "first offense," however, the Juvenile Court may exercise jurisdiction over all other offenses not otherwise excluded under § 52, including subsequent six months or less misdemeanors. We further conclude that, consistent with the purpose of the statute and the rule of lenity, the term "first offense" under § 52 means a first adjudication of delinquency.
We recognize, however, that, as a practical matter, this interpretation presents certain challenges. Because the statute excludes a "first offense" of a six months or less misdemeanor from the jurisdiction of the Juvenile Court, it is difficult to establish that a first offense has ever occurred. Indeed, where a juvenile's commission of a six months or less misdemeanor constitutes his or her "first offense," it would be dismissed under § 52 before ever reaching the adjudicatory stage of the proceeding. Because there would be no record of an adjudication of delinquency, every subsequent commission of a six months or less misdemeanor **791 would seemingly have to be dismissed as a "first offense" under § 52. As we conclude that the Legislature did not intend to create this type of "Catch-22" situation, but rather intended to excuse only a first offense while providing the Juvenile Court with jurisdiction over repeat juvenile offenders, we define here the means by which a first offense, even one that did not result in a prior delinquency adjudication, may be proved and recorded such that the Juvenile Court may exercise jurisdiction over subsequent offenses.
Accordingly, the case is remanded to the county court for entry of a judgment vacating the order denying the juvenile's motion to dismiss the delinquency complaint and remanding the matter to the Juvenile Court for further proceedings consistent with this opinion.[1] ,[2]
Background. For the purposes of this appeal, the parties agreed to the following facts. In late August 2018, the juvenile was arrested for operating a motor vehicle without a license in violation of G. L. c. 90, § 10. Following the juvenile's arrest, the arresting officer filed an application for a delinquency complaint. The court activity record information (CARI) database revealed that the juvenile had a court history that included several dismissed drug charges, a dismissed charge of operating a motor vehicle without authority, and an open case for breaking and entering in the nighttime with the intent to commit a felony. Probable cause had been found on one or more of these previous charges. A delinquency complaint on the new charge subsequently *585 issued, and the juvenile was scheduled for arraignment.
Prior to arraignment, the juvenile moved to dismiss the complaint under G. L. c. 119, § 52, arguing that because he did not have any prior delinquency adjudications, and because the maximum punishment for unlicensed operation of a motor vehicle is a fine, see G. L. c. 90, § 20, the charge was a "first offense of a misdemeanor" under § 52. Accordingly, he argued, the Juvenile Court did not have jurisdiction over the matter. The motion judge disagreed, concluding that the new charge was not the juvenile's "first offense" under the statute because a clerk-magistrate had **792 made a prior finding of probable cause on at least one of the juvenile's prior offenses. The judge denied the motion to dismiss the complaint and proceeded with the arraignment.
The juvenile thereafter filed a petition for relief in the county court, pursuant to G. L. c. 211, § 3 ; the single justice reserved and reported the case to the full court.
Discussion. 1. Statutory background. The Juvenile Court "is a court of limited jurisdiction, which has no ... authority in the absence of a specific statutory authorization" (quotation and citation omitted). Commonwealth v. Mogelinski, 473 Mass. 164, 167, 40 N.E.3d 544 (2015). The Juvenile Court's statutory authorization to govern delinquency proceedings is found in G. L. c. 119, §§ 52 et seq. See G. L. c. 218, § 60. The court may only exercise jurisdiction, however, over delinquency complaints charging juveniles with offenses identified under § 52's definition of the term "[d]elinquent child." G. L. c. 119, §§ 52 - 58. See Commonwealth v. Santos, 47 Mass. App. Ct. 639, 642-643, 715 N.E.2d 455 (1999) ("a child can be adjudicated a delinquent only after proceedings upon a complaint alleging the child to be a delinquent child within the meaning of § 52").
The scope of the Juvenile Court's jurisdiction over delinquency proceedings underwent a substantial change in July 2018, after the Legislature enacted St. 2018, c. 69, entitled "An Act relative to criminal justice reform" (criminal justice reform act or act). For over one-half century prior to the enactment of the criminal justice reform act, the term "[d]elinquent child" was broadly defined as "a child between seven and seventeen who violates any city ordinance or town by-law or who commits any offence against a law of the commonwealth." G. L. c. 119, § 52, as amended through St. 1960, c. 353, § 1. The criminal justice reform act considerably narrowed this definition by excluding children below the age of twelve and children who commit any civil infractions, or violate any municipal ordinances or town bylaws. Most relevant to this appeal, the amendment also excluded children who commit "a first offense of a misdemeanor" meeting the statutory definition. St. 2018, c. 69, § 72. The act did not define the term "first offense" or explain how such a first offense may be proved.
2. Meaning of "first offense of a misdemeanor" language. The parties offer competing interpretations of what this "first offense of a misdemeanor" language means. As an initial matter, the parties dispute whether the exclusion of "a first offense of a misdemeanor" applies only, as the Commonwealth contends, to **793 the commission of a single six months or less misdemeanor, or, as the juvenile argues, to the juvenile's first offense of every six months or less misdemeanor. More specifically, the Commonwealth argues that the exclusion under § 52 is a one-time exclusion from jurisdiction over the first time a juvenile commits a six months or less misdemeanor. The juvenile, on the other hand, argues that the exclusion applies to the first time a juvenile commits each individual *586 six months or less misdemeanor. Under the juvenile's interpretation, a juvenile could conceivably commit every individual six months or less misdemeanor once without the Juvenile Court ever having jurisdiction. We conclude the Commonwealth's interpretation of this aspect of the statute to be correct.
We review questions of statutory interpretation de novo. Millis Pub. Sch. v. M.P., 478 Mass. 767, 775, 89 N.E.3d 1170 (2018). When interpreting a statute, our primary duty is to "effectuate the intent of the Legislature in enacting it." Matter of E.C., 479 Mass. 113, 118, 92 N.E.3d 724 (2018), quoting Sheehan v. Weaver, 467 Mass. 734, 737, 7 N.E.3d 459 (2014). To that end, we begin with the statutory language. See International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 853, 443 N.E.2d 1308 (1983) ("the primary source of insight into the intent of the Legislature is the language of the statute"). We also consider the "cause of [the statute's] enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." Adoption of Daisy, 460 Mass. 72, 76-77, 948 N.E.2d 1239 (2011), quoting DiFiore v. American Airlines, Inc., 454 Mass. 486, 490, 910 N.E.2d 889 (2009). In so doing, however, we are careful to "avoid any construction of statutory language which leads to an absurd result, or that otherwise would frustrate the Legislature's intent" (quotation and citation omitted). Bellalta v. Zoning Bd. of Appeals of Brookline, 481 Mass. 372, 378, 116 N.E.3d 17 (2019). Indeed, "our respect for the Legislature's considered judgment dictates that we interpret the statute to be sensible, rejecting unreasonable interpretations unless the clear meaning of the language requires such an interpretation." DiFiore, supra at 490-491, 910 N.E.2d 889. Finally, we consider the legislative history where it is informative. Casseus v. Eastern Bus Co., 478 Mass. 786, 797, 89 N.E.3d 1184 (2018) ("A statute's meaning must be reasonable and supported by the ... history of the statute" [quotation and citation omitted] ).
All these tools of statutory construction support the Commonwealth's argument that "a first offense of a misdemeanor" applies only to the commission of a single six months or less misdemeanor.
**794 The plain language of § 52 refers to "a first offense of a misdemeanor" (emphasis added). G. L. c. 119, § 52. It does not, as the juvenile's interpretation would suggest, refer to a "first offense" of "every" different type of six months or less misdemeanor. See Commonwealth v. McLeod, 437 Mass. 286, 294, 771 N.E.2d 142 (2002) ("We will not add words to a statute that the Legislature did not put there, either by inadvertent omission or by design").
Moreover, when considered in the context of the entire definition, the meaning of this aspect of the statutory language is clear. See Commonwealth v. Hanson H., 464 Mass. 807, 810, 985 N.E.2d 1179 (2013) ("we look to the language of the entire statute, not just a single sentence, and attempt to interpret all of its terms harmoniously to effectuate the intent of the Legislature" [quotation and citation omitted] ). In the same definition, the Legislature eliminated all civil infractions and violations of municipal ordinances or town bylaws as predicates for delinquency adjudications. These categorical exclusions stand out in stark contrast from the single exclusion applicable to misdemeanors, which applies only to "a first offense of a misdemeanor" for which the punishment is a fine or imprisonment for six months or less (emphasis added). G. L. c. 119, § 52. If the Legislature intended, as the juvenile argues, to categorically exclude the first offense of every misdemeanor meeting the *587 statutory definition, it would have done so explicitly. See Ginther v. Commissioner of Ins., 427 Mass. 319, 324, 693 N.E.2d 153 (1998) (noting that Legislature intended different meanings where it used different language in different portions of same statute).
The Commonwealth's interpretation is also supported by the purpose of the statute. As the Legislature has directed, statutes governing delinquency proceedings, including § 52, are to be "liberally construed so ... the children brought before the court ... shall be treated ... as children in need of aid, encouragement and guidance." G. L. c. 119, § 53. Thus, we have repeatedly recognized that the juvenile justice system "is primarily rehabilitative, cognizant of the inherent differences between juvenile and adult offenders, and geared toward the correction and redemption to society of delinquent children" (quotation and citation omitted). Commonwealth v. Humberto H., 466 Mass. 562, 576, 998 N.E.2d 1003 (2013). See Commonwealth v. Magnus M., 461 Mass. 459, 466, 961 N.E.2d 581 (2012) ("goal of the juvenile system of justice to act in the best interests of children by encouraging and helping them to become law-abiding and productive members of society, and not to label and treat them as criminals" [quotation and citation omitted]
**795 ). The rehabilitative purposes of the act recognize the difference between an isolated act of misbehavior, for which a second chance can and should be granted, and a pattern of such misbehavior, which cannot be ignored. Allowing a juvenile to commit a first offense of every individual six months or less misdemeanor would contravene these purposes. See Bellalta, 481 Mass. at 378, 116 N.E.3d 17 (courts "avoid any construction of statutory language which ... would frustrate the Legislature's intent" [quotation and citation omitted] ). Indeed, the rehabilitative philosophy of the juvenile justice system would be ill served by an interpretation of § 52 that would allow juveniles to repeatedly commit delinquent acts without any mechanism by which their delinquent behavior could be "correct[ed] and rede[emed]," including through the placement of the juvenile into a pretrial diversion program or some other alternative disposition suited to the juvenile's rehabilitative needs (citation omitted). Humberto H., supra. See G. L. c. 119, §§ 53, 54. See also Commonwealth v. Orbin O., 478 Mass. 759, 765, 89 N.E.3d 1151 (2018), citing Commonwealth v. Newton N., 478 Mass. 747, 758 n.6, 89 N.E.3d 1159 (2018) (describing district attorneys' efforts to provide rehabilitative pretrial diversion programs to juvenile defendants).
This interpretation is also supported by the legislative history of the criminal justice reform act, which refers to giving juveniles who make the mistake of committing criminal offenses early in life a "second chance." See State House News Service (House Sess.), Apr. 4, 2018 (statement of Rep. Kay Khan) (statutory amendment "will give young people a second chance"). See also Lazlo L. v. Commonwealth, 482 Mass. 325, 333-334, 122 N.E.3d 532 (2019) (describing legislative history of criminal justice reform act). The legislative history does not contemplate an unlimited number of such chances before the exercise of Juvenile Court jurisdiction and intervention. As the Legislature undoubtedly understood, juveniles engaging in repeated delinquent behavior should be subject to the jurisdiction of the Juvenile Court, as their rehabilitation and reform are critical to ensuring that they "become law-abiding and productive members of society." Magnus M., 461 Mass. at 466, 961 N.E.2d 581. Accordingly, we conclude that § 52's exclusion of "a first offense of a misdemeanor" applies only to a juvenile's first offense of a single six months or less misdemeanor *588 meeting the statutory definition, not his or her first offense of every six months or less misdemeanor.
For the same reason, we reject the juvenile's contention that the Juvenile Court may not exercise jurisdiction over a first offense of **796 a six months or less misdemeanor that follows a delinquency adjudication of a felony or a more serious misdemeanor. The exclusion from jurisdiction under § 52 applies only to six months or less misdemeanors that constitute the juvenile's "first offense." It does not, as the juvenile contends, apply to the first time a juvenile commits a six months or less misdemeanor without regard to the juvenile's prior record. The Legislature intended to excuse an isolated instance of more minor misdemeanor-level misconduct, not multiple misdemeanors, or a minor misdemeanor that follows more serious misconduct. It would make little sense, and indeed contravene the Legislature's intent, for a juvenile who had previously been adjudicated delinquent on one or more felonies, or one or more serious misdemeanors, to have a six months or less misdemeanor dismissed as a "first offense." Meyer v. Veolia Energy N. Am., 482 Mass. 208, 212, 121 N.E.3d 1221 (2019), quoting Ciani v. MacGrath, 481 Mass. 174, 178, 114 N.E.3d 52 (2019) ("we will not adopt a literal construction of a statute if the consequences of doing so are absurd or unreasonable, such that it could not be what the Legislature intended").
The more difficult question concerns what burden of proof or type of procedure is necessary to establish a "first offense" under § 52. The juvenile contends that a "first offense" of a six months or less misdemeanor has not occurred unless there is a prior adjudication of delinquency for the same misdemeanor offense. The Commonwealth argues that a first offense has occurred if there is a probable cause finding in any of the juvenile's prior criminal matters.
This aspect of the meaning of "first offense" under § 52 is not self-explanatory. Where, as here, the statutory language is not defined, we ordinarily give the words their usual and accepted meanings, which we derive "from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions." See Scione v. Commonwealth, 481 Mass. 225, 235, 114 N.E.3d 74 (2019), quoting Commonwealth v. Campbell, 415 Mass. 697, 700, 616 N.E.2d 430 (1993). The word "offense," however, has different meanings in different contexts. For example, sentencing statutes tend to treat the word "offense" as synonymous with "conviction" or "adjudication." See, e.g., G. L. c. 266, § 30A (shoplifters punished "for a first offense by a fine not to exceed [$250], for a second offense by a fine of not less than one hundred dollars nor more than [$500] and for a third or subsequent offense by a fine of not more than [$500] or imprisonment ... or by both such fine **797 and imprisonment"); G. L. c. 270, § 6A ("A person who sells tobacco rolling papers to a person under the age of [twenty-one] shall be punished by a fine of [twenty-five dollars] for the first offense, fifty dollars for the second offense and [one hundred dollars] for a third or subsequent offense").
Other statutes, however, distinguish offenses from adjudications or convictions. Some expressly provide that one must be convicted of an offense to be punished, thereby implying that a criminal act may constitute an offense regardless of whether it results in a conviction or adjudication. See, e.g., G. L. c. 6, § 178C (defining "[s]ex offender" as person "who has been convicted of a sex offense or who has been adjudicated as a youthful offender or as a delinquent juvenile by reason of a sex offense").
*589 In the criminal justice reform act itself, there is still another definition of "offense," albeit in the context of expungement, where an offense is defined as a "violation of a criminal law for which a person has been charged and has made a criminal court appearance or a juvenile court appearance for which there is a disposition and a record." St. 2018, c. 69, § 195. Finally, dictionary definitions of the word do not clearly elucidate its meaning under § 52. See, e.g., Black's Law Dictionary 1250 (10th ed. 2014) (defining "offense" as "[a] violation of the law; a crime, often a minor one"); Webster's Third New International Dictionary 1566 (1993) (defining "offense" as "an infraction of law").
Where the meaning of a statute "is not plain from its language," we look "to the intent of the Legislature ascertained from all its words ... considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated" (quotation and citation omitted). DiFiore, 454 Mass. at 490, 910 N.E.2d 889. The Commonwealth reads § 52 to mean that a "first offense" has occurred if the juvenile has a probable cause finding for a prior offense. In other words, the commission of a six months or less misdemeanor will only constitute a juvenile's first offense under the statute if no prior findings of probable cause have been made against the juvenile in any of his or her prior delinquency matters. By contrast, the juvenile argues that a "first offense" of a six months or less misdemeanor under § 52 has not occurred unless there is a prior adjudication of delinquency. Under this interpretation, without a prior adjudication of delinquency, a juvenile's commission of a six months or less misdemeanor must be dismissed as a "first offense" under § 52.
**798 Neither interpretation, however, is without its faults. The Commonwealth's interpretation is not supported by either the words of the statute or its legislative history. Indeed, no reference to probable cause is found anywhere in § 52, and the Commonwealth has not directed us to any legislative history, and we have located none, that would suggest this to be the Legislature's intent. Interpreting § 52 as the Commonwealth would have us do would therefore require us to effectively rewrite the statute to include some form of a probable cause requirement. This we decline to do. Retirement Bd. of Somerville v. Buonomo, 467 Mass. 662, 672, 6 N.E.3d 1069 (2014) ("We will not add words to a statute that the Legislature did not put there, either by inadvertent omission or by design"). See Commonwealth v. Biagiotti, 451 Mass. 599, 602-603, 888 N.E.2d 364 (2008) ("It is not our function to rewrite a statute").
The juvenile's interpretation, on the other hand, suggests that the Legislature drafted a classic "Catch-22." As explained supra, § 52 creates an exclusion from the jurisdiction of the Juvenile Court. As there is intended to be no jurisdiction over a "first offense" of a six months or less misdemeanor for a juvenile who has not previously been adjudicated delinquent for any offense, it follows that there cannot be a final adjudication of delinquency for the first charged six months or less misdemeanor in any conventional sense, as the charge would be dismissed under § 52 before ever reaching the adjudicatory stage of the proceeding. Consequently, if, as the juvenile argues, a "first offense" under § 52 cannot occur unless there is a prior adjudication of delinquency, and there can never be a final adjudication over the first offense because there is no jurisdiction, the statute would, in effect, create a "Catch-22" and effectively eliminate *590 these misdemeanors as predicates for delinquency adjudications altogether. As explained supra, this is inconsistent with both the statutory language and the legislative intent to allow the Juvenile Court to exercise jurisdiction over repeat offenders.
What we are left with, then, is a statute the ambiguity of which creates "a vexing choice." Commonwealth v. Samuel S., 476 Mass. 497, 506, 69 N.E.3d 573 (2017). Where, as here, a statute can "plausibly be found to be ambiguous," however, the rule of lenity requires that the juvenile be given "the benefit of the ambiguity" (citation omitted). Hanson H., 464 Mass. at 813, 985 N.E.2d 1179. Accordingly, we read the term "first offense" to mean a first adjudication of delinquency, although, as we explain infra, not one that necessarily creates the "Catch-22" the juvenile seeks to enforce. This reading gives the **799 juvenile the benefit of the ambiguity, as it requires a higher showing from the Commonwealth before the Juvenile Court may exercise jurisdiction over a juvenile who has committed a six months or less misdemeanor.[3]
Although we cannot read "first offense" in this ambiguous provision to mean anything other than a first adjudication of delinquency, we must still resolve the apparent "Catch-22" problem, identified supra, that would seemingly eliminate all six months or less misdemeanors as predicates for delinquency adjudications. As this result was clearly not what the Legislature intended in amending § 52, we consider next how to carry out the Legislature's apparent intention of allowing a mechanism by which a juvenile who demonstrates recurrent delinquent behavior can have his or her "first offense" of a six months or less misdemeanor established, even if it did not result in a prior adjudication of delinquency. To that end, we examine the various circumstances in which the Juvenile Court may or may not exercise jurisdiction over an application for a delinquency complaint charging a juvenile with a six months or less misdemeanor under § 52.
For juveniles who have no prior record and a single new charge, the question of the Juvenile Court's jurisdiction is clear. In those cases, a delinquency complaint application charging the juvenile with a single six months or less misdemeanor must be dismissed as a "first offense" under § 52. This is exactly the second chance for a first offense the Legislature envisioned.
Similarly, the question of jurisdiction over a juvenile who has previously been adjudicated delinquent for any offense is rather straightforward. Such adjudications could have occurred, for example, for a felony, for misdemeanors with a maximum punishment of more than six months, or for a six months or less misdemeanor that occurred prior to the amendment to § 52. There could also be a prior delinquency adjudication of a six months or less misdemeanor out of State. In those cases, the Juvenile Court **800 may properly exercise jurisdiction pursuant to § 52 over a delinquency complaint application charging the juvenile with a six months or less misdemeanor, because such a charge would not *591 be the juvenile's "first offense" under the statute, and the exclusion would not apply.
More difficult to analyze, however, are cases involving juveniles who have not previously been adjudicated delinquent for any offense, but who may nonetheless have engaged in multiple offenses. The obvious examples are (1) a juvenile who has previously had a delinquency complaint application charging the juvenile with a six months or less misdemeanor dismissed as a "first offense" under § 52 ;[4] (2) a juvenile accused of committing two or more six months or less misdemeanors, or a six months or less misdemeanor and a greater offense or offenses; (3) a juvenile who has previously had a charge of a six months or less misdemeanor or a greater offense continued without a finding; and (4) a juvenile with an open case for another six months or less misdemeanor or a greater offense.
In these circumstances, a delinquency complaint application charging the juvenile with a six months or less misdemeanor may issue upon a finding of probable cause on the charge, provided that the Commonwealth notifies the clerk-magistrate prior to the issuance of the complaint that it intends to prove multiple offenses during any subsequent proceedings.[5] If a delinquency complaint issues on the subsequent six months or less misdemeanor, the juvenile may move to dismiss the complaint prior to arraignment on the ground that the charged conduct is a first offense under § 52. See Humberto H., 466 Mass. at 576, 998 N.E.2d 1003. A prearraignment evidentiary hearing shall then be ordered, at which time the Commonwealth must prove that the charge upon which the complaint has issued is not the juvenile's first offense under § 52. The Commonwealth must do this by proving, beyond a reasonable doubt, that the juvenile has committed a prior offense. Upon the motion judge's finding beyond a reasonable doubt that **801 the juvenile has committed a prior offense, the Commonwealth may proceed to arraignment on the charge upon which the delinquency complaint is based, as such a charge would not be the juvenile's first offense under § 52 and the Juvenile Court would therefore have jurisdiction to proceed. If, however, the motion judge concludes that the prior offense has not been proved beyond a reasonable doubt, the complaint shall be dismissed as a "first offense" under § 52.[6]
This procedure avoids the "Catch-22" problem that there can never be a second or subsequent offense because every offense is dismissed as a first offense. It also targets repeat juvenile offenders who engage in a pattern of misconduct, not a single isolated instance, in accordance with the Legislature's intent. It also protects the juvenile by ensuring that no complaint charging a juvenile with a six months or less misdemeanor will proceed to arraignment, and the negative consequences accompanying an arraignment will not attach, unless and until the Commonwealth *592 has demonstrated that it is not the juvenile's "first offense" under § 52.[7]
In the instant case, the juvenile has not been previously adjudicated **802 delinquent for any offense. Although probable cause had apparently been found in several prior cases, a number of those cases have been dismissed. Where the cases have been dismissed on the merits without an adjudication of delinquency, such cases cannot form the basis of a first offense. The record before us appears to indicate, however, that there is at least one pending case in which the juvenile has been charged with breaking and entering in the nighttime with the intent to commit a felony. The existence of this open case requires that the instant case be remanded. The Commonwealth may choose to proceed with the felony case first, and so notify the court. An adjudication of delinquency for such a felony charge would provide a basis to exercise jurisdiction over the misdemeanor charge in the instant case. Alternatively, the Commonwealth could notify the court that it intends to prove multiple offenses -- i.e., both the open felony charge and the misdemeanor -- in subsequent proceedings. If the open charge is found to have occurred beyond a reasonable doubt in a subsequent proceeding,[8] then the instant charge of unlicensed operation of a motor vehicle would not be considered a "first offense" under § 52. The Legislature, as previously explained, intended to excuse an isolated instance of more minor misdemeanor-level misconduct, not multiple misdemeanors or a misdemeanor combined with more serious misconduct. If, however, the Commonwealth fails to prove that the juvenile has committed a prior offense, the instant charge must be considered a first offense under § 52, and the case must be dismissed accordingly. *593 Finally, we recognize that the ambiguity of § 52, and the interpretation we adopt today consistent with that ambiguity and the rule of lenity, may pose challenges to the administration of juvenile proceedings in the Commonwealth going forward. We recognize in particular that, as drafted, § 52 requires multiple procedures to identify and prove first offenses that have no legal **803 effect other than to establish that a first offense has occurred.[9] Absent clarifying legislation, however, we are unable to adopt an interpretation of the meaning of "first offense" that avoids these complications. The Legislature, of course, may remedy these difficulties by enacting clarifying legislation.[10] See Commonwealth v. Morgan, 476 Mass. 768, 784-785, 73 N.E.3d 762 (2017).
Conclusion. We conclude that the Juvenile Court judge erred in deciding that a probable cause finding in a prior case was sufficient to establish that the instant complaint is not the juvenile's "first offense" of a six months or less misdemeanor under G. L. c. 119, § 52. A "first offense" must be proved beyond a reasonable doubt to have occurred. However, because there is at least one open case involving the juvenile in addition to the instant one, the Commonwealth may still be able to prove that the current delinquency complaint related to unlicensed operation of a motor vehicle is not the juvenile's "first offense" under the statute. Accordingly, the case is remanded to the county court for entry of a judgment vacating the order denying the juvenile's motion to dismiss the delinquency complaint and remanding the matter to the Juvenile Court for further proceedings consistent with this opinion.
So ordered.

We recognize the amicus brief submitted by the youth advocacy division of the Committee for Public Counsel Services and the Massachusetts Association of Criminal Defense Lawyers.

Because we remand this case, the juvenile's argument on appeal that we must expunge the entry of the charge of unlicensed operation of a motor vehicle from his juvenile record is premature.

This reading also satisfies another well-established principle: that, in addition to the rule of lenity, this court does not interpret an ambiguous statute against a juvenile because doing so "would conflict with the statutory command of G. L. c. 119, § 53," which provides that statutes governing delinquency proceedings, including § 52, are "liberally construed" so the children brought before the court "shall be treated ... as children in need of aid, encouragement and guidance" (citation omitted). Commonwealth v. Samuel S., 476 Mass. 497, 506, 509, 69 N.E.3d 573 (2017).

Dismissal on the ground that a charge is a "first offense" under § 52 is different from dismissal of a charge on the merits. A prior dismissal on the merits cannot provide the basis for a prior adjudication of delinquency.

We note that this may often require the clerk-magistrate, upon receipt of the complaint application in these circumstances, to notify the Commonwealth that an issue of first offense under § 52 is presented unless the Commonwealth intends to prove multiple offenses.

Should the juvenile subsequently be charged with another six months or less misdemeanor, the earlier dismissal as a "first offense" pursuant to § 52 does not itself establish that a "first offense" has occurred. The occurrence of a first offense must be proved beyond a reasonable doubt.

As we explained in Commonwealth v. Newton N., 478 Mass. 747, 755, 89 N.E.3d 1159 (2018), we are also "[m]indful of the importance of protecting a child from the stigma of being perceived to be a criminal and from the collateral consequences of a delinquency charge" (quotation, alteration, and citation omitted). Accordingly, we held that "the authority to rule on a motion to dismiss before arraignment to spare a child from a CARI record where the complaint was without probable cause was within the discretion of a Juvenile Court judge to 'protect the best interests of children consistent with the interest of justice.' " See ibr.US_Case_Law.Schema.Case_Body:v1">id., quoting Commonwealth v. Humberto H., 466 Mass. 562, 576, 998 N.E.2d 1003 (2013). We conclude that the Legislature has made a similar determination in regard to a first offense of a six months or less misdemeanor. When such a charge is dismissed as a "first offense" under § 52, record-keeping regarding the juvenile shall therefore be limited to MassCourts, the court's internal record-keeping database. The creation of this internal record in MassCourts is important for determining whether jurisdiction can be properly exercised over subsequent offenses, but it shall be maintained for this purpose alone. This record would not be a CARI record. Nor would this record in MassCourts be publicly accessible. See G. L. c. 119, § 60A ("records of the court in cases of delinquency arising under [§§ 52 to 59 ], inclusive, shall be withheld from public inspection except with the consent of a justice of such court"); Juvenile Court Standing Order 1-84 (1984) ("All juvenile court case records and reports are confidential and are the property of the court").

Of course, as explained supra, a motion judge's finding beyond a reasonable doubt that the prior felony offense occurred has no legal effect other than to establish that a first offense has occurred, thereby allowing the Juvenile Court to exercise jurisdiction over the subsequent charge of a six months or less misdemeanor. If the Commonwealth seeks an adjudication of delinquency on the felony charge, the juvenile is entitled to a jury trial. See G. L. c. 119, § 55A ("Trial of a child complained of as a delinquent child or indicted as a youthful offender in a division of the juvenile court department shall be by a jury ...").

In addition to the additional procedures that we have described in this decision, we note there may be other possible unforeseen burdens and difficulties imposed on the parties and the public. For example, a proceeding involving a juvenile in one county may require the Commonwealth to prove that the juvenile committed his or her first offense in a separate county months, or even years, prior. This would require a district attorney in one county to prove an offense that occurred in another, which would require the Commonwealth to track down evidence and witnesses from other counties in the Commonwealth. Regardless of location, witnesses would also be required to participate in a proceeding that has the sole purpose of establishing that a comparatively minor misdemeanor occurred some months or years earlier, with no other legal effect than to establish that a first offense has occurred.

The Legislature could, for example, amend § 52 once more to include an explicit definition of "first offense" and how such a first offense may otherwise be proved.