NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12354

COMMONWEALTH  vs.  NEWTON N., a juvenile.


Berkshire.      November 7, 2017. - February 5, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Budd, Cypher, &
Kafker, JJ.


Delinquent Child.  Probable Cause.  Insanity.  Mental
    Impairment.  Juvenile Court, Delinquent child.  Practice,
    Criminal, Juvenile delinquency proceeding, Complaint,
    Arraignment, Dismissal.



Complaint received and sworn to in the Berkshire County
Division of the Juvenile Court Department on June 2, 2016.

A motion to dismiss was heard by Judith A. Locke, J.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Kyle G. Christensen, Assistant District Attorney (Joseph A.
Pieropan, Assistant District Attorney, also present) for the
Commonwealth.
Laura Chrismer Edmonds for the juvenile.
The following submitted briefs for amici curiae:
Miriam H. Ruttenberg, Jennifer Honig, & Phillip Kassel for
Mental Health Legal Advisors Committee & others.
Ryan M. Schiff, Committee for Public Counsel Services, &
Joseph N. Schneiderman for Youth Advocacy Division of the
Committee for Public Counsel Services.
Daniel F. Conley, District Attorney for the Suffolk

District, & John P. Zanini, Assistant District Attorney, for District Attorney for the Suffolk District.

GANTS, C.J.  This case presents two important issues relevant to a Juvenile Court judge's consideration of a prearraignment motion to dismiss a delinquency complaint. First, we hold that a judge, in weighing whether the information contained within the "four corners" of the complaint application and related exhibits constitutes probable cause, may not consider whether a juvenile was criminally responsible for the charged offenses or whether the juvenile's mental impairment rendered the juvenile incapable of having the requisite criminal intent.  Second, we hold that, where a prosecutor exercises his or her discretion to proceed to arraignment on a delinquency complaint supported by probable cause, the judge may not dismiss the complaint before arraignment on the grounds that dismissal of the complaint is in the best interests of the child and in the interests of justice.  Because the judge in this case dismissed the delinquency complaint before arraignment where the complaint was supported by probable cause and where the prosecutor wished to proceed to arraignment, we vacate the dismissal and remand the case to the Juvenile Court.[1]

---

[1] We acknowledge the amicus briefs submitted by the district attorney for the Suffolk district; the youth advocacy division of the Committee for Public Counsel Services; and the Mental Health Legal Advisors Committee, on behalf of the Center for

Background.  On May 25, 2016, a police officer applied for and obtained a delinquency complaint from a clerk-magistrate, charging the juvenile with breaking and entering into a building in the nighttime with the intent to commit a felony, in violation of G. L. c. 266, § 16; breaking and entering into a vehicle in the nighttime with the intent to commit a felony, in violation of G. L. c. 266, § 16; larceny over $250, in violation of G. L. c. 266, § 30 (1); and disorderly conduct, in violation of G. L. c. 272, § 53.  The Commonwealth moved for arraignment and the juvenile moved prearraignment to dismiss the delinquency complaint.  The Juvenile Court judge, based on the documents that were submitted as part of the police officer's complaint application, allowed the juvenile's motion to dismiss and later issued written findings of fact and conclusions of law.

We summarize the judge's material findings.  On May 19, 2016, at approximately 1:35 A.M., police officers were dispatched to a multiunit apartment complex in North Adams in response to a report that a young boy wearing an orange shirt and shorts was making noise and carrying a gun.  When the officers arrived on the scene, they found two long rifles on the ground near one of the apartments.  The officers later recovered a revolver in the area.

Public Representation, Massachusetts Advocates for Children, Strategies for Youth, Citizens for Juvenile Justice, and the Center for Civil Rights Remedies.

Officer Ivan Cardeno spoke to the person who had reported the incident, who told him that she had observed a young male, approximately ten to twelve years old, enter two vehicles in the parking lot while carrying a long rifle.  She noted that she saw the boy holding the rifle up and repeatedly pulling the trigger, without aiming it.

Shortly thereafter, Officer Cardeno was informed that the boy had been located.  As Officer Cardeno approached the boy, who was wearing an orange T-shirt and shorts and whom he recognized as the juvenile, he heard the boy loudly cursing at the officers and attempting to pull away from them.  The juvenile continued this behavior as the officers escorted him home.  The boy sounded "deranged[,] making no sense at times."

The juvenile's behavior and "deranged statements" continued after he arrived home.  He declared himself to be "Satan" and said "we have weapons" and "we are going to kill everyone."[2]  His mother informed the officers that he had experienced an outburst earlier that day in Albany, New York, to which the police had responded, but that nothing had been done then.

Officer Cardeno determined that the juvenile was in need of a mental evaluation and called for an ambulance.  As the juvenile waited for the ambulance, he thrashed on the couch, hit himself on the head with closed fists, and rubbed his head with

---

[2] His mother denied that they had any firearms in the home.

his fists "in a very hard manner."  When he was asked where he had found the weapons, he said he got them from the house "with the blue light" and agreed to show the officers the location of the house.  He walked with the officers to an apartment near where the police had first responded.  The officers knocked on the door and, after receiving no answer, noted that the door was unlocked and entered the apartment.  After opening the door, they saw a night light that displayed a "bluish light."  When the two occupants of the apartment were awakened, one of them informed the officers that he had two black powder rifles and a revolver in the home, but discovered that the weapons were missing when he brought Officer Cardeno to see them.

When the juvenile was being transported by ambulance to the hospital, he began punching himself in the genitals with his closed fists and had to be placed in restraints.  The ambulance report indicated that the juvenile had an autism diagnosis and that he had not received his morning medication.

In explaining her reasons for allowing the motion to dismiss all four charges contained in the delinquency complaint, the judge noted that each of the alleged offenses included an element of specific intent.  The judge concluded, "[b]ased on the totality of the evidence,"[3] that there was not sufficient

_____

[3] The record appears to reflect that, at the motion to dismiss hearing, the juvenile's counsel provided the judge,

evidence as to the element of intent or the element of recklessness (for the charge of disorderly conduct) to support a finding of probable cause.  The judge determined, based on the juvenile's statements and actions, that the juvenile "was acting in a diminished, if not psychotic state, and therefore could not have possessed the requisite mental state."

Apart from what the judge characterized as "the extensive evidence of [the juvenile's] deranged mental state," the judge further reasoned that the juvenile's age -- twelve years old at the time of the offense -- was a "relevant" consideration in determining probable cause.  She noted that "adolescent brains are not as developed as [the brains of] adults when it comes to controlling impulses, foreseeing consequences, and tempering emotions," and that the juvenile was unable to control "any of the three."

The judge added:

"It is not only in the best interest of [the juvenile]

without objection, with three exhibits that were not attached to the application:  (1) the medical record from the hospital the juvenile was admitted to from May 25, 2016, to June 2, 2016; (2) an undated psychological evaluation of the juvenile; and (3) a letter dated June 22, 2016, from the Department of Developmental Services informing the juvenile that his charges were preventing his placement at a supervised residential placement program.  In her findings of fact, however, the judge stated that she relied solely on the complaint application and the single exhibit attached to that application.  The Commonwealth does not contend that the judge reached beyond the "four corners" of the complaint application and its attached exhibit in formulating her findings of fact.

> but in the interest of justice to dismiss these four
> charges prior to arraignment. [The juvenile] is a child in
> need of aid. He needs resources that will help him
> understand his mental health status and how to ensure
> stabilization moving forward. What [the juvenile] does not
> need is the risk of a [court activity record information
> (CARI)] affecting access to necessary services or having
> any other impact on [the juvenile's] future needs."

The Commonwealth appealed from the dismissal of the delinquency complaint, and we transferred the case to this court on our own motion.

Discussion. 1. Probable cause determination. The Commonwealth contends that the judge erred in granting the juvenile's prearraignment motion to dismiss because the complaint application and its attached exhibit established probable cause that the juvenile had committed the four charged offenses. Specifically, the Commonwealth contends that the judge erred by concluding that, because of the juvenile's "diminished, if not psychotic state," and the juvenile's age, there was not probable cause regarding the intent required in any of the four offenses.

"[A] motion to dismiss a complaint [for lack of probable cause] 'is decided from the four corners of the complaint application, without evidentiary hearing.'" Commonwealth v. Humberto H., 466 Mass. 562, 565 (2013), quoting Commonwealth v. Huggins, 84 Mass. App. Ct. 107, 111 (2013). "To establish probable cause, the complaint application must set forth

'reasonably trustworthy information sufficient to warrant a reasonable or prudent person in believing that the defendant has committed the offense.'" Humberto H., supra, quoting Commonwealth v. Roman, 414 Mass. 642, 643 (1993). "The complaint application must include information to support probable cause as to each essential element of the offense." Humberto H., supra at 565-566. Probable cause requires "more than mere suspicion," id. at 565, quoting Roman, supra, but "considerably less than proof beyond a reasonable doubt, so evidence that is insufficient to support a guilty verdict might be more than sufficient to establish probable cause." Humberto H., supra. See Commonwealth v. O'Dell, 392 Mass. 445, 451 (1984), quoting K.B. Smith, Criminal Practice and Procedure § 104 (1983) ("Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction"). Because the sufficiency of the evidence to establish probable cause is a question of law, we review the judge's probable cause determination de novo. See Humberto H., supra at 566.

Here, there is abundant evidence contained in the complaint application and the attached exhibit to support a finding of probable cause that the juvenile committed the acts alleged in each of the charged offenses. The judge's probable cause

finding, however, rested on her determination that the information within the four corners of the complaint application was insufficient to support a finding that the juvenile acted with the requisite intent because the juvenile was either not criminally responsible for his actions or was incapable of forming the requisite intent due to mental impairment. We need not evaluate the weight of the information in the complaint application regarding criminal responsibility or the juvenile's capacity to form the requisite intent because questions of criminal responsibility and mental impairment are not relevant considerations in determining probable cause. See Commonwealth v. Matthews, 406 Mass. 380, 388 (1990).

Criminal responsibility is not an element of an offense for which probable cause need be found. Rather, lack of criminal responsibility is an affirmative defense in which the Commonwealth bears the burden of proving "beyond a reasonable doubt that the [juvenile] was criminally responsible" once the juvenile proffers "some evidence" at trial that, when viewed in the light most favorable to the juvenile, "would permit a reasonable finder of fact to have a reasonable doubt whether the [juvenile] was criminally responsible at the time of the offense." Commonwealth v. Lawson, 475 Mass. 806, 811-812 (2016). See Mass. R. Crim. P. 14 (b) (2) (A), as appearing in 463 Mass. 1501 (2012) (if juvenile intends at trial to raise

defense of lack of criminal responsibility, juvenile must notify prosecutor in writing of such intention within time provided for filing of pretrial motions).

Mental impairment, often characterized as diminished capacity, is not an affirmative defense.  See Commonwealth v. Companonio, 445 Mass. 39, 45 n.7 (2005), quoting Commonwealth v. Hardy, 426 Mass. 725, 729 n.5 (1998) (although "mental impairment" is often colloquially referred to as "diminished capacity," "[t]here is no 'diminished capacity' defense in this Commonwealth").  Rather, consideration of a juvenile's mental impairment "is merely an application of the ordinary rules of law pertaining to the requisite mental state for conviction of a particular crime charged."  Commonwealth v. Mazza, 366 Mass. 30, 34 (1974).  But, due to the complex nature of mental impairment, evidence of which is often presented at trial through expert testimony, we require defendants to provide the same notice regarding their intent to raise an issue of mental impairment at trial as we do their intent to raise a defense of criminal responsibility.  See Mass. R. Crim. P. 14 (b) (2) (A) and Reporter's Notes (Revised, 2004), Massachusetts Rules of Court, at 186, 195 (Thomson Reuters 2016); Commonwealth v. Diaz, 431 Mass. 822, 829 (2000) ("this court has implicitly recognized that the procedures set forth in [Blaisdell v. Commonwealth, 372 Mass. 753, 766-769 (1977),] and [Mass. R. Crim. P.]

14 [b] [2] [B] should be applied where the defendant raises an issue regarding his mental impairment").

The probable cause determination made by a judge or clerk-magistrate based on the information in a complaint application is the same determination police officers must make in deciding whether to arrest. We do not reasonably expect either a police officer or a judicial officer at this incipient stage of a juvenile delinquency proceeding to have the information necessary to engage in any meaningful assessment of possible mental impairments or lack of criminal responsibility. Whether a juvenile's mental impairment renders him or her unable to form the requisite intent for a charged offense is an issue for trial, to be decided with the benefit of fair notice and perhaps expert testimony; it is not an issue that is appropriately part of the probable cause calculus. Accordingly, the judge erred in finding no probable cause based on the juvenile's inability to form the requisite intent as a result of the juvenile's mental impairment.

The judge also erred by considering the juvenile's age in determining his capacity to form the requisite intent. A juvenile's age may be given due consideration when evaluating the weight to give an inference of consciousness of guilt from a juvenile's nervousness when stopped by the police. See Commonwealth v. Ilya I., 470 Mass. 625, 632 (2015). But the

judge treated the juvenile's age as if it were akin to some form of mental impairment arising from the limitations of the adolescent brain to control impulses, foresee consequences, and temper emotions. Mental impairment -- regardless of whether it arises from an intellectual or psychological disorder, or from an immature, developing brain -- is simply not within the probable cause calculus.

2. Prearraignment dismissal based on best interests of the child and interests of justice. The juvenile contends that, even if the complaint application were sufficient to support a finding of probable cause, the judge did not abuse her discretion in dismissing the complaint prior to arraignment because she found that dismissal was both in the best interests of the child and in the interests of justice. The juvenile contends that, in Humberto H., 466 Mass. at 576, we broadened the power of dismissal for Juvenile Court judges by permitting them to dismiss a complaint prior to arraignment even where the judge finds probable cause to support the complaint, provided the judge finds that dismissal is in the best interests of the child and the interests of justice. The juvenile misconstrues our holding in Humberto H. We did not then, and do not now, grant a Juvenile Court judge the authority to dismiss a complaint before arraignment where the prosecutor moves for arraignment and where the complaint is supported by probable

cause.

Our opinion in Humberto H. must be understood in light of its procedural context. The Juvenile Court judge in that case had continued the juvenile's arraignment on the delinquency complaint alleging possession of marijuana with intent to distribute "in order to determine whether the complaint was issued based on probable cause." Id. at 564. The Commonwealth filed a petition under G. L. c. 211, § 3, asking a single justice of this court to vacate the order of continuance. Id. While the petition was pending, the juvenile filed a motion to dismiss the complaint for lack of probable cause. Id. The single justice denied the Commonwealth's petition on the ground that the mere continuance of an arraignment is not the type of order that warrants extraordinary relief, but declared in dictum that, where the complaint had issued, the judge was "without power to decline to arraign him on the charge." Id. At the subsequent hearing on the motion to dismiss, the judge indicated that he believed he had no authority to decline to arraign the juvenile if the Commonwealth chose to proceed with the arraignment, but declared that he would dismiss the case immediately after arraignment. Id. After the prosecutor declared her intent to go forward with the arraignment, the judge, in keeping with the single justice's dictum, arraigned the juvenile, but then heard argument on the juvenile's motion

to dismiss and granted the motion, finding no probable cause that the juvenile possessed the marijuana with the intent to distribute.  Id.  The Commonwealth then appealed from the dismissal.  Id.

We affirmed the judge's dismissal of the complaint for lack of probable cause, id. at 569, but went on to address the question whether a Juvenile Court judge has the authority to dismiss a complaint for lack of probable cause before arraignment.  Id. at 571-576.  We concluded that, where "a juvenile files a motion to dismiss a complaint before arraignment based on the absence of probable cause, and where a judge, after reviewing the 'four corners' of the complaint application, concludes that there is a substantial likelihood that the motion is meritorious, a judge does not abuse his discretion in deciding to hear and rule on that motion before arraignment to protect the child from the potential adverse consequences of a CARI record."  Id. at 575.  We noted that, "[a]fter arraignment, the juvenile's name and delinquency charge become part of the juvenile's permanent CARI record, and may not be expunged, even where the charge is immediately dismissed for lack of probable cause."  Id. at 572.  Mindful of the importance of "[p]rotecting a child from the stigma of being perceived to be a criminal and from the collateral consequences of a delinquency charge," we determined that the authority to rule on

a motion to dismiss before arraignment to spare a child from a CARI record where the complaint was without probable cause was within the discretion of a Juvenile Court judge to "protect the best interests of children consistent with the interests of justice."  Id. at 576.  We did not grant judges the authority to dismiss a delinquency complaint before arraignment where the complaint was supported by probable cause; nor were we asked to grant such authority.  Instead, we simply recognized that the best interests of children and the interests of justice are served by giving Juvenile Court judges the authority to dismiss a complaint before arraignment where the complaint is not supported by probable cause.

Here, the juvenile asks that we grant Juvenile Court judges the authority to dismiss a delinquency complaint before arraignment that is supported by probable cause where the judge determines that dismissal before arraignment would serve the best interests of the child and the interests of justice.  We decline to grant Juvenile Court judges this authority.

Generally, where a complaint is supported by probable cause, the decision to proceed with the prosecution rests in the broad and exclusive discretion of the prosecutor. See Commonwealth v. Cheney, 440 Mass. 568, 574 (2003). "Judicial review of decisions which are within the executive discretion of [a prosecutor] 'would constitute an intolerable

interference by the judiciary in the executive department of the government and would be in violation of art. 30 of the [Massachusetts] Declaration of Rights.'"[4]  Shepard v. Attorney Gen., 409 Mass. 398, 401 (1991), quoting Ames v. Attorney Gen., 332 Mass. 246, 253 (1955).  See Commonwealth v. Gordon, 410 Mass. 498, 500 (1991) (art. 30 instructs that judges may not "exercise[] discretionary decision-making power to decide whether a complaint, legally valid, should be pursued").  The Legislature may authorize judges to dismiss a valid complaint over a prosecutor's objection "without offending art. 30," as it has, for instance, in certain cases where defendants who are military veterans or active duty service members have successfully completed a pretrial diversion program.  Commonwealth v. Morgan, 476 Mass. 768, 780 (2017).  But in the absence of such legislative authorization, a judge does not have the authority to dismiss a legally valid complaint that a prosecutor chooses to prosecute, whether that be a criminal complaint or a delinquency complaint.  See Victory

---

[4] Article 30 of the Massachusetts Declaration of Rights, the separation of powers doctrine, provides:

"In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them:  the executive shall never exercise the legislative and judicial powers, or either of them:  the judicial shall never exercise the legislative and executive powers, or either of them:  to the end it may be a government of laws and not of men."

Distribs., Inc. v. Ayer Div. of the Dist. Court Dep't, 435 Mass. 136, 143 (2001).

We recognize that the Legislature has granted Juvenile Court judges considerable discretion regarding the disposition of a juvenile after an adjudication of delinquency. See G. L. c. 119, § 58; Commonwealth v. Mogelinski, 466 Mass. 627, 631 (2013), quoting Commonwealth v. Hanson H., 464 Mass. 807, 808 (2013) ("Juvenile Court judges have broad 'discretion . . . to render individualized dispositions consistent with the best interests of the child'"). Where allegations are proved beyond a reasonable doubt, the judge may adjudicate the child to be delinquent, or may continue the case without a finding and, with the consent of the child and at least one parent or guardian, place the child on probation. G. L. c. 119, § 58. See Commonwealth v. Magnus M., 461 Mass. 459, 466 (2012). The judge may even place the case on file after a child is adjudicated delinquent on a complaint. Id. at 463. And, in all juvenile proceedings, the statutory provisions regarding delinquency, G. L. c. 119, §§ 52-63, "shall be liberally construed so that the care, custody and discipline of the children brought before the court shall approximate as nearly as possible that which they should receive from their parents, and that, as far as practicable, they shall be treated, not as criminals, but as children in need of aid, encouragement and

guidance."  G. L. c. 119, § 53.  But the Legislature has not authorized Juvenile Court judges to dismiss valid delinquency complaints before arraignment over the objection of a prosecutor, and we do not infer from the aspirational language of § 53 the legislative grant of such authority.

Although a Juvenile Court judge is without authority to dismiss a complaint supported by probable cause before arraignment, we rely upon prosecutors to exercise their sound discretion in deciding whether to proceed with the arraignment of a juvenile, even where there is probable cause, and consider whether prosecution will serve the best interests of the child and the interests of justice.  See Carroll, petitioner, 453 Mass. 1006, 1006 (2009) (district attorney's authority to nol pros criminal complaint may be exercised before arraignment); Manning v. Municipal Court of the Roxbury Dist., 372 Mass. 315, 318 (1977), quoting Attorney Gen. v. Tufts, 239 Mass. 458, 489 (1921) (where finding of probable cause has been made, prosecutor has "[t]he authority vested in him by law to refuse on his own judgment alone to prosecute a complaint or indictment").  See generally Berger v. United States, 295 U.S. 78, 88 (1935) (prosecutor's interest in criminal prosecution "is not that [he or she] shall win a case, but that justice shall be done"); Robert H. Jackson, United States Attorney General, The Federal Prosecutor, Address at Second Annual Conference of

United States Attorneys (Apr. 1, 1940) ("the citizen's safety lies in the prosecutor who tempers zeal with human kindness, who seeks truth and not victims, who serves the law and not factional purposes, and who approaches his task with humility"). Nowhere is the exercise of sound discretion more important than in cases involving juveniles with mental health challenges.[5] In cases where a juvenile is eligible, prosecutors also have the option of considering diversion programs prior to arraignment as an alternative to prosecution. We note that the vast majority of district attorneys have established such juvenile pretrial diversion programs.[6]

---

[5] According to a 2006 nationally representative survey of over 7,000 incarcerated youth, the majority of juvenile offenders in residential facilities are diagnosed with at least one mental illness, and the prevalence of severe mental health illness among incarcerated youth (twenty-seven per cent) is two to four times higher than the national rate of all youth. The survey demonstrated that the majority of juvenile residential facilities are ill prepared to adequately address the needs of youth in their custody. See D. Gottesman & S.W. Schwarz, National Center for Children in Poverty, Juvenile Justice in the U.S.: Facts for Policymakers, at 3, 4 (July, 2011), http://www.nccp.org/publications/pdf/text_1038.pdf [https://perma.cc/BP3U-SXGN].

[6] As of 2015, ten of the eleven district attorneys in the Commonwealth indicated that their office used pretrial diversion programs for juvenile defendants in some capacity (informal or formal). See E. Niedzwiecki, S. Irazola, C. Churchill, & M. Field, ICF International, Massachusetts Juvenile Diversion Assessment Study, at i (Jan., 2015), https://static1.squarespace.com/static/58ea378e414fb5fae5ba06c7/t/593709d2197aeac077e3f2f9/1496779220634/MADiversion_FinalReport_2015+01+14-FINAL.PDF [https://perma.cc/WW2S-SRHV]. While most offices used diversion prior to arraignment, "four offices indicated that diversion may

In this case, although we vacate the dismissal of the delinquency complaint, the prosecutor needs to decide whether to proceed anew with the arraignment, and, as part of that discretionary decision, may consider all that has been learned about the juvenile since the hearing on the motion to dismiss.

Conclusion.  We vacate the order of dismissal of the delinquency complaint and remand the matter to the Juvenile Court for proceedings consistent with this opinion.

So ordered.

---

also occur during the pre-complaint stage in cases where youth are referred directly by law enforcement or a clerk[-]magistrate to the [district attorney's] office."  Id. at 23.  In February, 2017, the district attorney for the Suffolk district launched the Juvenile Alternative Resolution pilot program, which screens "eligible juvenile offenders to determine their risk level and service needs in order to connect them with individually-tailored support networks."  Juveniles who complete their diversion programs successfully "will see their cases resolved without convictions."  See Press Release, DA Conley Launches Juvenile Diversion Program with UMass Boston, Community Partners (Feb. 3, 2017), http://www.suffolkdistrictattorney.com/da-umass-community-partners-join-forces-in-historic-juvenile-diversion-program [https://perma.cc/6XEZ-SU8X].