NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12752

ULLA U., a juvenile vs.  COMMONWEALTH.

Suffolk.     January 9, 2020. - July 21, 2020.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Cypher, & Kafker, JJ.

Juvenile Court, Jurisdiction, Delinquent child.  Jurisdiction, Juvenile Court, Juvenile delinquency proceeding, Transfer hearing.  Practice, Criminal, Juvenile delinquency proceeding, Transfer hearing, Delay in commencement of prosecution, Interlocutory appeal.  Delinquent Child.

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on May 16, 2019.

The case was heard by Budd, J.

Michelle Menken (Ziyad S. Hopkins, Committee for Public Counsel Services, also present) for the juvenile.
Monica J. DeLateur, Assistant District Attorney (Michelle P. Slade, Assistant District Attorney, also present) for the Commonwealth.
Alison R. Bancroft, for youth advocacy division of the Committee for Public Counsel Services, amicus curiae, submitted a brief.

LENK, J.  We take this opportunity to clarify certain

procedural questions that have arisen in connection with the

"transfer hearing" in the Juvenile Court afforded juveniles by G. L. c. 119, § 72A. That statute was enacted to close a gap in the statutory scheme as it concerned the treatment of those persons who had reached their nineteenth birthdays and were apprehended for acts allegedly committed when they had not yet reached their eighteenth birthdays. See St. 1996, c. 200, § 13A (establishing transfer hearings); St. 2013, c. 84, § 23 (raising birthdays by one year).

Because the Juvenile Court has limited jurisdiction, ordinarily not including those over eighteen years of age, and because "adult" courts have no jurisdiction over those whose acts occurred while the individual was still a juvenile (i.e., under age eighteen), no court had jurisdiction in such circumstances. The Legislature remedied this state of affairs by creating the "transfer hearing," which was to take place in the Juvenile Court. There, a Juvenile Court judge would determine whether probable cause existed and, if so, whether the public interest would be served best by prosecuting the individual as an adult in the District Court, or by discharging the individual. See G. L. c. 119, § 72A; Commonwealth v. Mogelinski, 473 Mass. 164, 172 (2015) (Mogelinski II); Commonwealth v. Mogelinski, 466 Mass. 627, 646 & n.11 (2013) (Mogelinski I).

There has been lingering uncertainty, however, about the proper procedures to follow, both in the Juvenile Court and in seeking appellate review, when what is at issue is whether the prosecutor improperly delayed bringing criminal charges until after a juvenile's nineteenth birthday. The merits of this juvenile's[1] motion to dismiss on such grounds are not before us, and we express no view on that matter.

Rather, we direct our attention to a determination whether, as the juvenile maintains, her motion to dismiss should have been heard by the Juvenile Court judge prior to her arraignment, or whether, as the Commonwealth maintains, the matter should have been heard by the Juvenile Court judge after arraignment, as part of the transfer hearing itself.[2] We conclude that a Juvenile Court judge has authority to hear such a motion to dismiss as a part of the transfer hearing after arraignment.[3] As to whether a juvenile has an automatic right of appeal under

---

[1] We refer to the subject of the proceedings below as the "juvenile," even though she is now over twenty years old.

[2] Both parties are in accord, and we agree, that the Juvenile Court judge erred in declining to act on the juvenile's motion, under the belief that she had no authority to do so.

[3] If a juvenile moves to dismiss on the ground that the complaint fails to establish probable cause, a Juvenile Court judge may still decide this motion prior to arraignment. See Commonwealth v. Humberto H., 466 Mass. 562, 575-576 (2013).

G. L. c. 211, § 3, where the motion is denied, we conclude that he or she does not.

1. Background. Shortly after noon on October 14, 2016, officers of the Boston police department responded to a two-vehicle crash in the Roslindale section of Boston. They found one of the vehicles turned over onto the driver's side and identified the juvenile as the operator of the heavily damaged vehicle. A reconstruction of the accident later would reflect that she had been driving at approximately seventy miles per hour, forty miles per hour over the speed limit, when she lost control of the vehicle. At the time of the crash, she was seventeen years old. The juvenile was taken to a local hospital, where she was treated for injuries that were not life threatening. A rear seat passenger in the juvenile's vehicle was found unresponsive at the scene. The passenger also was transported for medical treatment, but was pronounced dead at the hospital.

In August of 2018, a detective with the Boston police department filed an application for a complaint against the juvenile. On August 16, 2018, an assistant clerk-magistrate issued a complaint charging the juvenile with multiple offenses related to the accident, including one count of involuntary

manslaughter, G. L. c. 265, § 13.[4]  By that time, the juvenile was nineteen years old.

The juvenile was summonsed to appear for arraignment in the Juvenile Court on September 21, 2018.  The arraignment was postponed until October by agreement of the parties.  On October 10, 2018, prior to arraignment, the juvenile filed a motion to dismiss for prosecutorial delay and lack of probable cause.  In November 2018, a Juvenile Court judge determined that the complaint was supported by probable cause, and therefore denied the juvenile's motion on that ground.  She also allowed the Commonwealth's motion for an evidentiary hearing on the issue of prosecutorial delay.  Soon thereafter, however, the Commonwealth filed a motion to arraign the juvenile.  In that motion, the Commonwealth argued that a Juvenile Court judge lacked the authority to hear the juvenile's motion to dismiss for inexcusable or bad faith delay prior to arraignment.

Following a nonevidentiary hearing in February 2019, the same judge denied the juvenile's motion to dismiss due to prosecutorial delay.  The judge concluded that, as a result of the limited jurisdiction granted to the Juvenile Court under

---

[4] The juvenile also was charged with assault and battery by means of a dangerous weapon (the vehicle), G. L. c. 265, § 15A; reckless operation of a motor vehicle, G. L. c. 90, § 24 (2) (a); speeding, G. L. c. 90, § 17; and unlicensed operation of a motor vehicle, G. L. c. 90, § 10.

G. L. c. 119, § 72A, she lacked the authority to decide the merits of the juvenile's motion. The judge then determined that the juvenile's motion should be heard after the transfer hearing was complete and any subsequent complaint was issued in an adult court. The judge also declined to report questions of law regarding her authority under G. L. c. 119, § 72A, and allowed the Commonwealth's motion to arraign the juvenile.

In May 2019, the juvenile filed in the county court a petition for extraordinary relief pursuant to G. L. c. 211, § 3. In June 2019, the single justice denied the petition. The juvenile subsequently was arraigned; she pleaded not delinquent, and was released on personal recognizance.

In June 2019, the juvenile appealed to this court from the single justice's denial. We allowed the juvenile's appeal to proceed, notwithstanding that, ordinarily, a juvenile may not seek review of the denial of a motion to dismiss until after trial. While recognizing that the question of prearraignment dismissal was moot as to this juvenile,[5] we noted that the issue

---

[5] We note, however, that the question regarding the authority of a Juvenile Court judge to decide a motion to dismiss for prosecutorial delay is not entirely moot as to the juvenile. Although she has been arraigned, no transfer hearing apparently has taken place. Thus, because we conclude that a Juvenile Court judge has the authority to hear a juvenile's motion to dismiss as part of the transfer hearing after arraignment, see part 2.b.iv, infra, this decision well may affect the future proceedings in the Juvenile Court.

was one of the proper procedure and timing of efforts to appeal, did not reach the merits of the motion to dismiss, was "important, likely to recur in similar circumstances, but also likely to evade review in the normal course," and that the juvenile had no other means by which to seek relief. See Acting Supt. of Bournewood Hosp. v. Baker, 431 Mass. 101, 103 (2000).

Before us are the two questions raised in the juvenile's petition for extraordinary relief: the scope of a Juvenile Court judge's authority to hear a juvenile's motion to dismiss for bad faith or inexcusable delay under G. L. c. 119, § 72A, and, if such a motion is denied, whether the juvenile has the right to an interlocutory appeal.

2. Discussion. a. Standard of review. "We will not reverse an order of a single justice in a proceeding brought pursuant to G. L. c. 211, § 3, absent an abuse of discretion or other clear error of law. Thus, we review independently the single justice's legal rulings to determine whether it is erroneous.'" Commonwealth v. Bernardo B., 453 Mass. 158, 167 (2009), quoting Youngworth v. Commonwealth, 436 Mass. 608, 611 (2002).

"To facilitate this determination, this court previously has exercised its power of review under {G. L.] c. 211, § 3, to examine the merits of the case presented to the trial judge." Commonwealth v. Nettis, 418 Mass. 715, 717 (1994), quoting

Planned Parenthood League of Mass., Inc. v. Operation Rescue, 406 Mass. 701, 709 n.7 (1990). Accordingly, we begin with the procedural issue presented to the Juvenile Court judge -- the scope of her authority to hear the juvenile's motion to dismiss prior to arraignment.

b. Judicial authority to hear motion to dismiss prior to arraignment. As the motion judge recognized, the authority of the Juvenile Court is limited by statute, and "must either be articulated expressly or be capable of being deduced by necessary and inevitable implication" (quotation and citation omitted). Johnson v. Commonwealth, 409 Mass. 712, 716 (1991). See Wallace W. v. Commonwealth, 482 Mass. 789, 792 (2019); Mogelinski I, 466 Mass. at 645. To determine whether this authority extends to resolving a motion to dismiss for inexcusable or bad faith delay, we first must consider the role of G. L. c. 119, § 72A, in the broader statutory framework that defines the respective jurisdictions of the juvenile and adult courts.

i. Transfer hearings under G. L. c. 119, § 72A. General Laws c. 119, § 72A, provides:

> "If a person commits an offense or violation prior to his eighteenth birthday, and is not apprehended until after his nineteenth birthday, the court, after a hearing, shall determine whether there is probable cause to believe that said person committed the offense charged, and shall, in its discretion, either order that the person be discharged, if satisfied that such discharge is consistent with the

protection of the public; or, if the court is of the opinion that the interests of the public require that such person be tried for such offense or violation instead of being discharged, the court shall dismiss the delinquency complaint and cause a criminal complaint to be issued. The case shall thereafter proceed according to the usual course of criminal proceedings and in accordance with the provisions of [G. L. c. 218, § 30,] and [G. L. c. 278, § 18]. Said hearing shall be held prior to, and separate from, any trial on the merits of the charges alleged."

This language grants the Juvenile Court jurisdiction over juveniles who commit a crime before they are eighteen, but who are not "apprehended" -- meaning that no prosecution is commenced against them -- until after they are at least nineteen years old. See Mogelinski II, 473 Mass. at 171 ("G. L. c. 119, § 72A, confers jurisdiction in circumstances where . . . a defendant otherwise would face no possibility of prosecution"); Mogelinski I, 466 Mass. at 635; Commonwealth v. Porges, 460 Mass. 525, 531 (2011) (discussing legislative efforts to ensure juveniles do not slip through "cracks"). Where the Juvenile Court exercises jurisdiction over a juvenile by virtue of its authority under G. L. c. 119, § 72A, a Juvenile Court judge has express authority to take one of two actions. The judge may exercise his or her discretion to discharge the juvenile, in which case no criminal prosecution will occur, or the judge instead may dismiss the juvenile complaint and cause a criminal complaint to be issued in the District Court, where "[t]he case

shall thereafter proceed according to the usual course of criminal proceedings."  Id.

ii.  Motion to dismiss for bad faith or inexcusable delay. When the Commonwealth proceeds against a juvenile under G. L. c. 119, § 72A, some degree of delay is inherent in the prosecution.  This delay often will result from circumstances entirely beyond the Commonwealth's control.  See, e.g., J.H. v. Commonwealth, 479 Mass. 285, 293 (2018) ("As we discern no indicia of bad faith from this record, and the timing of the prosecution appears directly connected to the complainant's willingness to proceed, we conclude that this argument [of bad faith delay] has no merit").  Where other means of prosecution are available, the possibility that a Juvenile Court judge might exercise his or her discretion to discharge a juvenile serves as a powerful disincentive from making use of G. L. c. 119, § 72A. Given this, we consistently have expressed confidence that the Commonwealth's resort to G. L. c. 119, § 72A, will be rare, and will be exercised only where seeking a timely complaint or indictment in the Juvenile Court was not feasible.  See, e.g., Mogelinski II, 473 Mass. at 172.

Nonetheless, we have recognized that the transfer hearing procedure of G. L. c. 119, § 72A, could, in theory, be misused to proceed in an adult court against a person who committed an offense as a juvenile.  Under this scenario, the Commonwealth

intentionally could delay proceeding against a juvenile until after his or her nineteenth birthday, at which point the juvenile would have "'aged out' of the Juvenile Court's jurisdiction."  See Commonwealth v. Nanny, 462 Mass. 798, 806 (2012).  Such inexcusable or bad faith delay would deprive a juvenile of certain advantages of the juvenile justice system.  See G. L. c. 119, § 53 (proceedings in Juvenile Court are not "deemed criminal proceedings," and juveniles are "treated, not as criminals, but as children in need of aid, encouragement and guidance"); Commonwealth v. Humberto H., 466 Mass. 562, 575-576 (2013) ("the juvenile justice system is primarily rehabilitative, cognizant of the inherent differences between juvenile and adult offenders, and geared toward the correction and redemption to society of delinquent children" [quotations and citation omitted]).[6]

We have not identified an actual instance of such bad faith or inexcusable delay; nor are we aware of any case where another court in the Commonwealth has done so.  In the event that such delay occurs, however, we have provided a potential remedy for an aggrieved juvenile.  Because inexcusable or bad faith delay could implicate due process concerns, see, e.g., Porges, 460 Mass. at 532 n.4, the "acknowledged remedy for delay" is

---

[6] Of course, the most serious implication of delay is the possibility of being committed to adult prison.

dismissal of the charging instrument, Commonwealth v. Imbruglia, 377 Mass. 682, 688 (1979). On such a motion to dismiss, the juvenile has the initial burden of raising the issue of bad faith or inexcusable delay. Once the issue is raised, the burden shifts to the Commonwealth to demonstrate the absence of bad faith, including "the unfeasibility of timely seeking and obtaining" alternative process. See Mogelinski I, 466 Mass. at 646 n.11. See also, e.g., J.H., 479 Mass. at 293.

iii. Timing of a motion to dismiss due to bad faith or inexcusable delay. The question before us is not whether the juvenile may pursue a motion to dismiss, but rather, when that motion may be decided. To resolve this question involves two separate inquiries: first, whether a Juvenile Court judge has the authority to hear the motion at all and, if so, whether the judge must arraign the juvenile before deciding the motion.

The authority of a Juvenile Court judge to decide a motion to dismiss for bad faith or inexcusable delay is a "necessary and inevitable implication" of the transfer hearing process (quotation and citation omitted). See Johnson, 409 Mass. at 716. General Laws c. 119, § 72A, expressly grants a Juvenile Court judge discretion to determine whether the public interest requires that a juvenile be tried or discharged. To exercise that discretion, a judge necessarily must have the authority to consider the issue of prosecutorial delay. If the Commonwealth

were to misuse the transfer hearing process through bad faith or inexcusable delay, the interests of the public would be ill served by permitting such a prosecution to proceed.

Unduly limiting the authority of a Juvenile Court judge to consider these issues would frustrate one of the fundamental purposes of G. L. c. 119, § 72A, i.e., empowering Juvenile Court judges to decide "whether the prosecution may proceed altogether."  Nanny, 462 Mass. at 806.  We will not "impose an overly narrow or artificial construction on a statute that would frustrate a grant of jurisdiction that the Legislature clearly intended."  Mogelinski II, 473 Mass. at 171, quoting Porges, 460 Mass. at 532.

We turn to consider whether a Juvenile Court judge has the discretion to hear a motion to dismiss for inexcusable or bad faith delay prior to arraignment, or may do so only after arraignment.  Following arraignment, "the juvenile's name and delinquency charge become part of the juvenile's permanent [court activity record information (CARI)] record, and may not be expunged."  See Humberto H., 466 Mass. at 572, citing Commonwealth v. Gavin G., 437 Mass. 470, 473-474 (2002).  If, however, a Juvenile Court judge has discretion to dismiss a case prior to arraignment, he or she may choose to spare the juvenile from these "collateral consequences of a delinquency charge."  Humberto H., supra at 576.

As a general rule, a Juvenile Court judge has no authority to dismiss a complaint prior to arraignment. The decision to arraign ordinarily is tantamount to a prosecutor's exclusive discretion whether to prosecute a case. See Commonwealth v. Newton N., 478 Mass. 747, 755-757 (2018). Arraignment is the initial point at which a plea is entered, pretrial conferences are scheduled, and the discovery process begins. See Mass. R. Crim. P. 7, as appearing in 461 Mass. 1501 (2012); Mass. R. Crim. P. 14, as appearing in 442 Mass. 1518 (2004). To dismiss a valid complaint at this initial stage would "short-circuit[] the adversary process by silencing the people's elected voice," and thereby "usurp[] the decision-making authority constitutionally allocated to the executive branch." Commonwealth v. Gordon, 410 Mass. 498, 500-501 (1991). This would violate art. 30 of the Massachusetts Declaration of Rights, which provides that "[i]n the government of this commonwealth . . . the judicial [department] shall never exercise the legislative and executive powers."

There are only two circumstances under which we have recognized that a Juvenile Court judge may dismiss a complaint prior to arraignment without running afoul of the separation of powers set forth in art. 30. First, the Legislature occasionally has expressly granted judges the discretion to decide whether a prosecution may go forward without the need for

conducting an arraignment.  Second, in the absence of express statutory authority, a Juvenile Court judge has discretion to consider a motion to dismiss a complaint prior to arraignment where that complaint on its face is not legally valid.  See Mogelinski II, 473 Mass. at 167 (lack of jurisdiction);[7] Humberto H., 466 Mass. at 575 (lack of probable cause).  Neither of these exceptions is applicable here.

Where the Legislature has intended to permit prearraignment dismissal, it has stated so explicitly.[8]  General Laws c. 119, § 72A, is conspicuously silent on this point.  Had the Legislature sought to single out juveniles who are discharged pursuant to G. L. c. 119, § 72A, and shield them from the

---

[7] Here, the motion judge properly exercised her discretion to decide, prior to arraignment, whether the complaint against the juvenile established probable cause.

[8] For some offenses, juveniles are now eligible by statute to participate in pretrial, prearraignment diversion programs, if a judge determines that a particular program would be suitable for the juvenile, see G. L. c. 119, § 54A (b), inserted by St. 2018, c. 69, § 75; or, with the Commonwealth's approval, if the juvenile agrees to participate in a restorative justice program, see G. L. c. 276B, § 2, inserted by St. 2018, c. 69, § 202.  "A child complained of as a delinquent child may, upon the request of the child, undergo an assessment prior to arraignment to enable the judge to consider the suitability of the child for diversion. . . .  If a case is continued pursuant to this subsection, the child shall not be arraigned and an entry shall not be made into the criminal offender record information system until a judge issues an order to resume the ordinary processing of a delinquency proceeding" (emphasis added).  See Commonwealth v. Newberry, 483 Mass. 186, 194-195 (2019), quoting G. L. c. 119, § 54A (b).

consequences of a CARI record, "it could have used similar language; it chose not to do so." Commonwealth v. Newberry, 483 Mass. 186, 195 (2019). We will not read such additional protections into this statute, particularly where doing so unnecessarily would implicate separation of powers concerns. See Commonwealth v. Dayton, 477 Mass. 224, 228 (2017) ("where the Legislature used specific language in one part of an enactment . . . , but not in another . . . , the language should not be implied where it is not present").

In the absence of legislative authorization, a Juvenile Court judge may also dismiss a complaint prior to arraignment only where the complaint itself, on its face, is invalid.[9] Cf. Newton N., 478 Mass. at 755-756. Under such circumstances, the judge may determine the issue of legal validity based on the "four corners of the complaint," and without the need for an evidentiary hearing. Commonwealth v. Orbin O., 478 Mass. 759, 762 (2018), quoting Humberto H. 466 Mass. at 565.

Assessing an allegation of inexcusable or bad faith prosecutorial delay under G. L. c. 119, § 72A, presents a substantially different inquiry. Such delay does not implicate the validity of the delinquency complaint itself, or the

_____

[9] Here, the motion judge properly exercised her discretion to decide, prior to arraignment, whether the complaint against the juvenile established probable cause.

jurisdiction of the Juvenile Court to hear it. Rather, it calls into question whether a District Court ultimately may exercise jurisdiction over the juvenile.

As noted supra, the legislatively prescribed vehicle for determining whether the case should proceed to the District Court is the second stage of the transfer hearing under G. L. c. 119, § 72A. We repeatedly have recognized that the transfer hearing in the Juvenile Court serves the same function as a bind-over probable cause hearing in the District Court. See, e.g., Nanny, 462 Mass. at 805. It is notable that when the District Court does not exercise final jurisdiction over a defendant pending a probable cause hearing, our rules of criminal procedure nonetheless explicitly contemplate that an arraignment must occur in the District Court. See Mass. R. Crim. P. 7 (b) (4) ("At a District Court arraignment on a complaint which is outside of the District Court's final jurisdiction or on which jurisdiction is declined, the court shall schedule the case for a probable cause hearing" [emphasis added]). We see no reason to treat the analogous transfer hearing under G. L. c. 119, § 72A, differently in this respect.

Moreover, a motion to dismiss for inexcusable or bad faith delay cannot be resolved merely by referring to the face of the complaint. While some delay will always be apparent in a complaint subject to G. L. c. 119, § 72A, the presence of bad

faith will not. Instead, the Juvenile Court judge likely would need to hold an evidentiary hearing where the judge could receive testimony from Commonwealth witnesses, such as investigating officers, as to why a timely complaint or indictment in the Juvenile Court was not feasible. At the very least, because such an inquiry would occur as part of the transfer hearing, the juvenile would have the opportunity to "present a defense and cross-examine witnesses." Nanny, 462 Mass. at 805. This necessarily complex assessment is far removed from a probable cause determination based on the four corners of a complaint; it must be conducted following an arraignment.

c. Right to immediate appeal. Finally, we turn to the single justice's determination that the juvenile in this case did not have a right to pursue an immediate appeal pursuant to G. L. c. 211, § 3.

Our supervisory authority under G. L. c. 211, § 3, is "exercised only in exceptional circumstances and where necessary to protect substantive rights in the absence of an alternative, effective remedy" (quotation and citation omitted). MacDougall v. Commonwealth, 447 Mass. 505, 510 (2006). "Relief under G. L. c. 211, § 3, is not available where the [defendant] has or had adequate and effective avenues other than G. L. c. 211, § 3, by

which to seek and obtain the requested relief" (citation omitted). Lanoue v. Commonwealth, 427 Mass. 1014, 1015 (1998).

As we noted in our order permitting this appeal, "[i]n general, 'there is no right to interlocutory review of the denial of a motion to dismiss pursuant to G. L. c. 211, § 3.'" N.M. v. Commonwealth, 478 Mass. 89, 91 (2017), quoting Flood v. Commonwealth, 465 Mass. 1015, 1016 (2013). We have allowed such appeals only in very narrow circumstances, where proceeding without an appeal completely and irreparably would deprive a defendant of his or her fundamental rights. See Gangi v. Commonwealth, 462 Mass. 158, 160 n.2 (2012) (allowing "temporarily" committed defendant to appeal from denial of motion to dismiss sexually dangerous person petition "[i]n light of his immediate liberty interest in resolution of this dispute" [quotation and citation omitted]); McGuinness v. Commonwealth, 423 Mass. 1003, 1004 (1996) (permitting appeal from denial of motion to dismiss on double jeopardy grounds).

Given that we ordinarily do not allow interlocutory review of motions to dismiss, the single justice did not abuse her discretion by declining to reach the merits of the juvenile's claims. "A single justice, in his or her discretion, may . . . properly decline to employ the court's extraordinary power of general superintendence where exceptional circumstances are not present." Aroian v. Commonwealth, 483 Mass. 1008, 1009 (2019),

quoting Commonwealth v. Narea, 454 Mass. 1003, 1004 n.1 (2009).

Cf. Commonwealth v. Fontanez, 482 Mass. 22, 26 (2019) ("we

routinely uphold single justice denials of . . . petitions where

there are no novel, systemic, or case-determinative issues, or

other aspects that make the petitions exceptional").

Here, the single justice recognized that the juvenile had

other adequate avenues by which to obtain appellate review,

namely, by appeal following any subsequent conviction.  The

single justice cited this court's decision in N.M., 478 Mass. at

91, and the Commonwealth's statements in its opposition, both of

which discuss just such a remedy.  Thus, while the Juvenile

Court judge's conclusion that she lacked the authority to decide

the motion to dismiss was clearly erroneous, the single justice

was not compelled to address that error at the stage of the

proceeding before her.  Cf. Commonwealth v. Richardson, 454

Mass. 1005, 1005-1006 (2009) ("We will review interlocutory

matters in criminal cases only when substantial claims of

irremediable error are presented . . . and only in exceptional

circumstances . . . where it becomes necessary to protect

substantive rights" [quotations and citation omitted]).  Because

the single justice properly applied the standard of G. L.

c. 211, § 3, there was no abuse of discretion in denying the

petition.

While the single justice did not err in declining to reach the merits of the petition, we are not precluded from reaching the procedural questions now.  The second question remains: whether a juvenile ordinarily may seek interlocutory review under G. L. c. 211, § 3, from the denial of a motion to dismiss under G. L. c. 119, § 72A, on the grounds of inexcusable delay or bad faith.  As this issue has been fully briefed, and is capable of repetition yet evading review, we exercise our discretion to resolve it.  For the reasons discussed infra, we conclude that a juvenile has no automatic right to an interlocutory appeal from the denial of a motion to dismiss for bad faith or inexcusable delay.

The juvenile maintains that when the Commonwealth inexcusably delays in bringing a prosecution under G. L. c. 119, § 72A, the Juvenile Court has no jurisdiction to hear the case, and the juvenile has the right not to be tried.  To delay her appeal until after the resolution of the criminal case against her irreparably would deprive her of that right.  Therefore, she urges us to treat a motion to dismiss in such circumstances like a motion to dismiss on double jeopardy grounds, and to permit interlocutory appeal.  Cf. McGuinness, 423 Mass. at 1004.

We do not agree.  In our prior cases, we have noted that an adult defendant may not appeal immediately from the denial of a motion to dismiss on grounds similar to those at issue here,

including undue preindictment delay, see King v. Commonwealth, 442 Mass. 1043, 1044 (2004), and even violations of due process, see Jackson v. Commonwealth, 437 Mass. 1008, 1009 (2002).  Nor have we allowed an immediate appeal simply because a motion to dismiss was considered and denied prior to arraignment.  See Brea v. Commonwealth, 473 Mass. 1012, 1013 (2015).  Further, even if we agreed with the juvenile that inexcusable delay could deprive the Juvenile Court of jurisdiction, we previously have concluded that the denial of a motion to dismiss for lack of jurisdiction likewise is not immediately appealable.  See Fitzpatrick v. Commonwealth, 453 Mass. 1014, 1015 (2009); Gouin v. Commonwealth, 439 Mass. 1013, 1013 (2003).

That the juvenile seeks to appeal from a decision of the Juvenile Court does not alter our analysis.  See A Juvenile v. Commonwealth, 466 Mass. 1035, 1036 (2013) (applying G. L. c. 211, § 3).  In Fitzpatrick, 453 Mass. at 1015, we determined that a juvenile had no right to immediate appeal from the denial of a motion to dismiss for lack of jurisdiction where a judge of the Juvenile Court transferred that juvenile's case to adult court pursuant to G. L. c. 119, § 72A.  We noted that, in the event that the juvenile were to be convicted, "any error [could] be adequately remedied in his direct appeal."  Id.  We subsequently reached the same conclusion where a juvenile, like the petitioner here, argued that the Commonwealth inexcusably

delayed prosecution until the juvenile had aged out of the jurisdiction of the Juvenile Court, necessitating resort to G. L. c. 119, § 72A.  See A Juvenile, supra.

The petitioner has presented no compelling reason to depart from this reasoning, and thus to apply G. L. c. 211, § 3, more expansively in her case.  While we acknowledge that "the ordinary appellate process will not restore the protective nature of juvenile proceedings," should error later be discovered, "even the absence of an adequate alternative remedy, as the juvenile claims here, does not by itself make review under G. L. c. 211, § 3, automatic."  N.M., 478 Mass. at 92-93.

Finally, it is not a fait accompli that this juvenile indeed will face the range of possible consequences of prosecution as an adult; to date, no Juvenile Court judge has concluded that her case should be transferred to adult court. In the event that her case were to be transferred, and she ultimately were to be convicted, she would be able to raise the denial of her motion to dismiss for bad faith or inexcusable delay on direct appeal.

Therefore, we affirm our earlier holding in A Juvenile, 466 Mass. at 1036, and conclude that a juvenile subject to G. L. c. 119, § 72A, does not have a right to an immediate appeal under G. L. c. 211, § 3, from the denial of a motion to dismiss for bad faith or inexcusable prosecutorial delay.

3.  <u>Conclusion</u>.  The matter is remanded to the county court, where an order shall enter remanding the matter to the Juvenile Court for further proceedings consistent with this opinion.

<u>So ordered</u>.